**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| DAVID WAYNE SCHAMENS, | ) | Case No. 23-10483 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| JOHN PAUL H. COURNOYER, in his capacity as U.S. Bankruptcy Administrator for the Middle District of North Carolina, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Pro. No. _____ |
| v. | ) | |
| | ) | |
| DAVID WAYNE SCHAMENS, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT**

Plaintiff John Paul H. Cournoyer, in his capacity as the United States Bankruptcy Administrator for the Middle District of North Carolina ("Plaintiff"), complaining of the Defendant David Wayne Schamens, alleges:

**JURISDICTION, VENUE, AND PARTIES**

1. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334.

2. Venue for this adversary proceeding is proper under 28 U.S.C. § 1409.

3. Under 28 U.S.C. § 157(a), the United States District Court for the

Middle District of North Carolina has referred the above-captioned bankruptcy case and this adversary proceeding to this Court by its Local Rule 83.11.

4. This is a core proceeding under 28 U.S.C. § 157(b)(1) and (2) in which this Court has constitutional authority to enter final orders and judgments.

5. The Plaintiff consents to final orders and judgment by this Court.

6. Plaintiff John Paul H. Cournoyer is the United States Bankruptcy Administrator for the Middle District of North Carolina, who may raise and be heard on any issue in a bankruptcy case. *See* Judicial Improvements Act of 1990, Pub. L. No. 101-650, 104 Stat. 5089 (1990).

7. Defendant David Wayne Schamens is a citizen of North Carolina and resides in Guilford County, North Carolina. He is the debtor in the above-captioned chapter 7 bankruptcy case. His address of record in the bankruptcy case is 812 Northern Shores Point, Greensboro, NC 27455, and as recently as July 8, 2024, he filed a pleading with the U.S. Court of Appeals for the Fourth Circuit listing this as his address. Although there may be mail forwarding from this address, the Defendant has not resided at this address since June 10, 2024. The Plaintiff is unaware of the Defendant's current residential address.

## FACTUAL ALLEGATIONS

8. Among other things, the Defendant (i) failed to disclose assets, liabilities, and pending litigation in his schedules and statement of financial affairs, (ii) lied at his meeting of creditors, and (iii) presented or used a false claim in an attempt to prevent the bankruptcy trustee from administering his residence. He

has been dishonest throughout his bankruptcy case, and his discharge should be denied.

## Dugan Judgment

9. In August 2015, Guy M. Dugan, Karen Dugan, and the GDM Family Trustee (the "Dugans") filed a lawsuit, Case No. 3:15-cv-00366-RJC-DSC, in the U.S. District Court for the Western District of North Carolina against the Defendant, his wife Piliana Schamens, and various business entities affiliated with the Defendant. The suit asserted securities fraud and other claims. It alleged that the Dugans invested over $800,000 in one of the business entities, which the defendants instead used for their personal gain and benefit, while providing the Dugans with fictitious account statements showing that the investments were making significant gains.

10. After two years of extensions and delays, in October 2017 the U.S. District Court for the Western District of North Carolina entered judgment in favor of the Dugans against the Defendant, his wife and the other affiliated business entities, in amounts totaling $632,042.29, plus post-judgment interest at the legal rate, plus attorney's fees of $13,057.50.

11. The Defendant appealed, raising a jurisdictional argument. The procedural and legal details are not relevant to this action. The Fourth Circuit ultimately remanded the matter to this district court in October 2020. In March 2022, the district court vacated the judgment as to one of the business entities, but the judgment remained the same in all other respects.

12. In February 2022, the Dugans domesticated their judgment against the Defendant in Guilford County, North Carolina.

### Aggie Investment Judgment

13. In December 2014, Aggie Investment LLC ("Aggie Investment"), an entity owned or controlled by Guy Dugan, filed a lawsuit against the Defendant, his wife, and other affiliated entities including Invictus Real Estate Investment LLP, in North Carolina Superior Court, Mecklenburg County, Case No. 14-CVS-22820. This lawsuit asserted similar claims to the Dugans' suit in federal court.

14. In June 2016, the state court entered judgment in favor of Aggie Investment, against the Defendant and others, in the amount of $570,179.69.

### Pillar Capital Partners LLC and the Property at 138 Arnold Palmer Drive, Advance, NC

15. When Aggie Investment's lawsuit was first filed, residential property at 138 Arnold Palmer Drive, Advance, NC 27006, was held in the name of Invictus Real Estate Investment LLP—an entity owned or controlled by the Defendant.

16. Shortly after Aggie Investment's lawsuit was filed, in January 2015, the Defendant signed a warranty deed on behalf of Invictus Real Estate Investment LLP, transferring the property at 138 Arnold Palmer Drive to himself in his individual name.

17. Pillar Capital Partners LLC ("Pillar Capital") is a Delaware limited liability company formed in June 2015.

18. The Defendant was a member and the person in control of Pillar Capital.

19. In May 2015, a deed of trust in the amount of $548,876.71, signed by the Defendant and granted in favor of "Pillar Capital Partners," was recorded against the property at 138 Arnold Palmer Drive.

20. Upon information and belief, Pillar Capital Partners did not actually make a loan to the Defendant in this amount, and the deed of trust was recorded as an attempt to protect the property from execution by creditors.

21. In July 2015, the Defendant opened a bank account in Pillar Capital's name with Bank of America. He signed the documents necessary to open the account as Pillar Capital's member and was the only person with signature authority on the account.

22. After Aggie Investment obtained its judgment in June 2016, the parties reached a settlement. As part of the settlement, in November 2016, a deed of trust against the property at 138 Arnold Palmer Drive was granted in favor of Aggie Investment LLC, in the amount of the $570,179.69 judgment. The deed of trust was executed by the Defendant, his wife, and Invictus Real Estate Investment LLP. This deed of trust provided for the debt to be paid within 245 days.

23. Pillar Capital Partners subordinated its deed of trust to Aggie Investment, as reflected by the subordination agreement filed in November 2016 with the Davie County Register of Deeds. The subordination agreement was executed on Pillar Capital Partner's behalf by "Leisa Rowe, Managing Partner."

24. Upon information and belief, the Defendant defaulted under the terms of the settlement agreement.

25. Aggie Investment foreclosed on the property at 138 Arnold Palmer Drive in September 2017. Aggie Investment was the purchaser at foreclosure, with a bid of $450,000—leaving a portion of the judgment unsatisfied.

### False Claim of Daufuskie Lending Partners LLC

26. In December 2019, the Defendant acquired the residential property at 812 Northern Shores Point, Greensboro, NC 27455.

27. In connection with the purchase, the Defendant borrowed money from Carter Bank & Trust, who was granted a deed of trust against the property in the amount of $900,000.

28. Aggie Investment transcribed its judgment to Guilford County, North Carolina, which became a lien against the property. In May 2021, the Guilford County Sherriff provided the Defendant with Notice of Execution Sale with respect to the property at 812 Northern Shores Point.

29. After this notice was received, in June 2021, a deed of trust was recorded in favor of Daufuskie Lending Partners, LLC ("Daufuskie"), in the amount of $756,814.70. The deed references a note dated January 5, 2015. The Defendant signed this deed of trust.

30. The Dugans then filed an action in Guilford County Superior Court, against Dausfuskie Lending Partners, LLC, Piliana M. Schamens, David W. Schamens, and Steven K. Novak, trustee, seeking a determination that the deed of trust was fraudulent or otherwise invalid.

31. In May 2023, after delays due to repeat bankruptcy filings, and

sanctions findings that included the individual defendants' answers being stricken, the court entered judgment against all defendants that the deed of trust in favor of Daufuskie Lending Partners was fraudulent, and no such debt existed.

32. Even though the order found that the debt purportedly owed by the Defendant did not exist, the Defendant appealed. The mere fact that the Defendant sought to appeal the invalidity of the debt, while the putative creditor did not, supports the conclusion that the Daufuskie claim was a false claim.

33. The Defendant's appeal was dismissed by the North Carolina Court of Appeals on June 20, 2024.

34. In addition to the court order finding that the debt did not exist, other factors support the conclusion that the Dausfuskie claim was a false claim presented or used by the Defendant to hinder the Dugans' collection activities and protect the Greensboro, NC property from execution.

35. Daufuskie did not exist when the note was purportedly executed, nor when the deed of trust was recorded.

36. In January 2020, Pillar Capital Partners LLC, acting through the Defendant, obtained pre-approval from Carter Bank & Trust, to purchase a house on Daufuskie Island, SC. This is the same entity that filed a suspicious deed of trust against the Advance, NC property, while Aggie Investment was pursuing recovery from the property.

37. By March 2024, Pillar Capital Partners LLC had become an inactive entity. Pillar Capital—through filings signed by "Steve Novak"— attempted to

revive the entity and change its name to Daufuskie Lending Partners, LLC. However, it appears these filings were not accepted due to the failure to pay associated filing fees.

38. A search of the Delaware Department of State's website reveals no entity named Daufuskie Lending Partners LLC. Regardless, even if Daufuskie were a valid entity, it did not exist until March 2024 when Pillar Capital changed its name.

39. Despite discovery requests in the Guilford County litigation regarding the invalidity of the Daufuskie claim, no documentation supporting the validity of the claim was produced.

<u>Bankruptcy Filings as a Litigation Tactic to Protect the Defendant's Residence</u>

40. In May 2022, Defendant filed a chapter 13 bankruptcy petition, *pro se*. Case No. 22-10260. The case was dismissed in June 2022, due to the Defendant's failure to obtain credit counseling as required by 11 U.S.C. § 109(h).

41. In August 2022, the Defendant filed another chapter 13 case, *pro se*. Case No. 22-10418.

42. In the context of the second bankruptcy filing, the Dugans brought an adversary proceeding seeking a judgment determining that the Daufuskie deed of trust was invalid, unenforceable, and cancelled.

43. In September 2022, the chapter 13 trustee filed a motion to dismiss for failure to make plan payments, failure to provide tax returns, and for filing inadequate schedules and an inadequate proposed plan. In October 2022, the

Defendant filed his own motion seeking dismissal of the case, stating that "litigation in state court [with the Dugans] should be far less expensive and judicially more efficient." Case No. 22-10418, Doc. No. 25. In October 2022, the case was dismissed, and the Defendant was barred from refiling a chapter 13 bankruptcy petition for a period of 12 months.

44. The Defendant's wife then filed a chapter 13 bankruptcy petition, *pro se,* in February 2023. Her case was dismissed in April 2023, with a 180-day bar from refiling a bankruptcy case.

45. In September 2023, while the 12-month bar from refiling a chapter 13 case was still in place, the Defendant voluntarily filed this case under chapter 11. The Court promptly entered its standard operating order, which included the requirement that the debtor close any pre-existing bank accounts, establish a debtor-in-possession depository account, and provide the Plaintiff with account information within seven days.

46. On September 11, 2023, the Defendant filed a motion to extend time periods under the operating order, which this Court granted in part. The Defendant was allowed until September 18, 2023, to establish a deposit account.

47. On September 19, 2023, a designation of depository was filed on the docket. However, no evidence of any new depository account was ever provided to the Plaintiff, in violation of the operating order.

48. On September 19, 2023, the Defendant filed his initial bankruptcy schedules and statement of financial affairs, which he declared to be true and

correct under penalty of perjury.

49. The Defendant's initial schedules listed ownership of a half-interest in his residence at 812 Northern Shores Point, Greensboro, NC 27455. He listed the total value of the house at $1.6 million, and $800,000 for his half-interest. However, the Defendant owned 100% of the property, not half.

50. The Defendant's initial schedules listed 0% interests in Bold Analytics, Ltd. and GeniHealth, Inc. However, the Defendant's statement of financial affairs indicated that within the four years pre-petition he was the owner of at least 5% of the voting or equity securities of a corporation, and listed both Bold Analytics, Ltd. and GeniHealth, Inc.

51. The Defendant also scheduled a TV and computer valued at $500, golf clubs valued at $500, and clothes and shoes valued at $1,000.

52. Except for the above, no other assets were scheduled.

53. The Defendant scheduled Carter Bank and Trust and Daufuskie Lending Partners as holding a secured claims against his residence. He scheduled unsecured claims of "Dugan et. al.," Wells Fargo Bank, Chase Bank, Capital One, Discover, and "Duke Energy/Piedmont Nat Gas" as holding unsecured claims. The claim of "Dugan et. al." was scheduled as disputed.

54. Except for the above, no other claims of creditors were scheduled.

55. The Debtor omitted many creditors from his schedules, including claims of Aggie Investment, Theodore Van Leer, Caroline Van Leer, Anne M. Blanken, the Credit Shelter Share Trust, the Lambertsen Charitable Remainder

Unitrust, a claim for unpaid costs to the N.C. Court of Appeals, Weeks Hardwood Flooring Inc., and Zayo Group LLC.

56. The Defendant scheduled Daufuskie Lending Partners as a creditor, even though he knew it was a false claim.

57. The Defendant scheduled no executory contracts or unexpired leases.

58. The Defendant's schedules indicated that he was the CEO of Bold Analytics, Ltd, with monthly income of $1,500. He indicated that his non-filing spouse was unemployed, but also indicated that she had monthly income $1,500, resulting in household income of $3,000 per month.

59. Despite listing monthly income, the Defendant did not schedule ownership of any deposit accounts.

60. The Defendant's statement of financial affairs also indicated that he had no income from any source during 2022, or during the portion of 2023 prior to filing his bankruptcy case.

61. Section 9 of the Defendant's statement of financial affairs identified only one lawsuit or court action that he was party to in the preceding year: a lawsuit described as "fraudulent case" brought by Dugan *et. al* in the U.S. District Court for the Western District of North Carolina. Section 10 identified a pending foreclosure action by Carter Bank.

62. The Defendant did not disclose that he is the defendant in a pending securities fraud action brought by the Securities and Exchange Commission in the U.S. District Court for the District of New Jersey, Case No. 2:22-cv-01219-CCC-

JRA. The SEC action alleges that the Defendant defrauded at least 16 investors of at least $1.8 million. This information was required to be disclosed in the Defendant's statement of financial affairs.

63. The Defendant did not disclose that he is the defendant in a criminal case pending in the U.S. District Court for the District of New Jersey, Case No. 2:23-cr-00255-BRM. The criminal action asserts claims for wire fraud, securities fraud, money laundering. The criminal action alleges multiple victims that suffered millions of dollars of losses due to the Defendant's securities fraud. This litigation was required to be disclosed in the Defendant's statement of financial affairs, and the claim asserted by the SEC was required to be listed in the Defendant's Schedule E/F.

64. Upon information and belief, the victims identified in the criminal action hold claims against the Defendant. The Defendant did not list all these victims' claims in his bankruptcy schedules.

65. The Defendant did not disclose his pending appeal of the action brought by Dugan *et. al* in Guilford County state court, which sought to avoid a deed of trust in the name of Daufuskie Lending Partners LLC, against the Defendant's residence, as a fraudulent document. This information was required to be disclosed in the Defendant's statement of financial affairs.

66. The Defendant's chapter 11 meeting of creditors was scheduled for October 16, 2023. However, he failed to appear, and the meeting was adjourned to November 20, 2023.

67. On October 23, 2023, the Court converted the case to chapter 7, upon the motions of the Plaintiff and the Dugans.

68. On October 26, 2023, the Defendant filed a motion seeking authority to filed documents with the Court electronically, alleging that he "many times does not have access to transportation to make timely filings," and "[t]he costs of Uber are very prohibitive."

69. On November 14, 2023, the Court entered an order allowing the Defendant to submit filings via electronic mail to the courtroom deputy, to be followed by a complete signed original by regular mail within seven business days.

70. The Defendant then proceeded to violate this order on multiple occasions, leading the permission to be modified, and ultimately revoked. *See* Case No. 23-10483, Doc. Nos. 116, 117, 126, and 151.

71. The chapter 7 meeting of creditors was scheduled for November 20, 2023. The Defendant appeared, but refused to answer most of the questions, invoking his privilege against self-incrimination. The meeting was continued to January 8, 2024.

72. In December 2023, the Plaintiff filed a motion seeking to compel the Defendant to answer certain questions as his meeting of creditors. A hearing on this motion was held on January 9, 2024. At this hearing, the Defendant stated that he needed to file amended schedules.

73. On January 9, 2024, the Court entered an order requiring the Defendant to file his amended schedules by 12:00 noon EST on January 19, 2024,

which was later extended to 5:00 p.m. on January 26, 2024. The Defendant violated this order by failing to file amended schedules by this deadline.

74. On January 29, 2024, the Defendant filed an amendment to his schedules, disclosing a pre-paid credit card account with Bancorp Bank, NA, and a credit card account with Bank of Missouri, both with negative balances.

75. In February 2024, the Defendant amended his Schedule A/B. He again listed a half-interest in his residence at 812 North Shores Point, this time listing the total value at $1.5 million—$750,000 for his half-interest. He also listed a cause of action for aiding and abetting identity theft, which he valued at $100,000. He listed no other assets, indicating that he had no bank accounts, cash on hand, furniture, household goods, clothes, firearms, electronics, vehicles, business interests, or any other property.

76. The Defendant's residence contained furniture and other household goods that one would typically expect to see in a house with a value of approximately $1.5 million. Indeed, post-petition, the Defendant paid a moving company $14,840 to move the personal property to a new location. The source of funds for this payment is unknown. Yet, the Defendant scheduled no personal property other than a TV and computer valued at $500, golf clubs valued at $500, and clothes and shoes valued at $1,000.

77. The Defendant's meeting of creditors was conducted on February 5, 2024.

78. The debtor testified under oath that all the furniture in his house was

subject to a note in favor of Pillar Capital, which was defaulted on in 2017 or 2018. He testified that he had no interest in Pillar Capital. He testified that they "turned [the furniture] over" and "had to pay rent for it."

79. Thus, the testimony is unclear whether the debtor contends the furniture is his property subject to a secured claim, or Pillar Capital's property subject to a lease. Regardless, neither the furniture, nor any secured claim or lease in favor of Pillar Capital, was disclosed.

80. At his meeting of creditors, the Defendant falsely testified that he had outstanding debt to Daufuskie and/or Pillar.

81. At his meeting of creditors, the Defendant also falsely testified that he "never had an ownership interest in" Daufuskie or Pillar.

82. In March 2024, the trustee filed a motion to sell the property at 812 Northern Shores Point.

83. The Defendant objected to the sale motion, arguing, *inter alia*, that the case was a "no asset case" due to the deed of trust in favor of Daufuskie. The Defendant alleged that Daufuskie loaned $750,000 to him and his wife, which he argued held a valid deed of trust against the property. The debtor signed and filed this objection with the Court on March 28, 2024, at Doc. No. 212, and amended it on April 22, 2024, at Doc. No. 223, despite knowing that the purported Daufuskie debt was a false claim.

<u>Daufuskie Adversary Proceeding</u>

84. In February 2024, the chapter 7 trustee in the Defendant's bankruptcy

case filed an adversary proceeding against Daufuskie Lending Partners, LLC, seeking to determine that its deed of trust against the property at 812 Northern Shores Point was void.

85. Although he was not a party to the adversary proceeding, the Defendant filed a "Motion to the Court" in the adversary proceeding. Attached to the motion was a letter purporting to be from "Steven K. Novak" as the purported manager of Daufuskie Lending Partners, LLC.

86. The bankruptcy trustee also received emails from "Steven K. Novak" around this time. The trustee requested a phone call with Mr. Novak, but "Mr. Novak" declined. In response, the trustee stated that he suspected the emails "may be Mr. Schamens posing as Steven Novak" and that it would be "helpful to speak with you on the phone in order to dispel" that suspicion. "Mr. Novak" declined to speak with the trustee on the phone.

87. On March 26, 2024, the bankruptcy trustee filed a motion seeking entry of default against Daufuskie. The next day, the Defendant filed a Notice to the Court, stating that "[t]he Manager of Daufuskie Lending Partners, LLC . . . was making a substantial filing with the Court via overnight Federal Express."

88. On April 1, 2024, an Objection to Motion to Default was filed with the Court. It was purported to be filed by "Steven K. Novak" as Manager of Daufuskie Lending Partners, LLC. The objection sought more time for Daufuskie to respond to the complaint.

89. The facts and circumstances suggest that Mr. Schamens was posing as

Steven Novak, or acting in concert with him, to present or use the alleged Daufuskie claim, which the Defendant knew was a false claim, in a fraudulent attempt to prevent the trustee from administering the property at 812 Northern Shores Point.

## FIRST CAUSE OF ACTION
Denial of Discharge under 11 U.S.C. § 727(a)(2)

90. By concealing his assets and interests as described above, and as may be further revealed through discovery in this adversary proceeding, the Defendant, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under the bankruptcy code, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed, (i) property of the Defendant, within one year before the date of the filing of his bankruptcy petition, or (ii) property of the estate, after the date of the filing of his bankruptcy petition.

91. Therefore, the Court should deny the Defendant's discharge under 11 U.S.C. § 727(a)(2).

## SECOND CAUSE OF ACTION
Denial of Discharge under 11 U.S.C. § 727(a)(3)

92. By falsifying documentation related to the Daufuskie claim, failing to maintain or provide documents related to his financial condition, and as may be further revealed through discovery in this adversary proceeding, the Defendant has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the his

financial condition or business transactions might be ascertained, which was not justified under the circumstances of his case.

93. Therefore, the Court should deny the Defendant's discharge under 11 U.S.C. § 727(a)(3).

### THIRD CAUSE OF ACTION
Denial of Discharge under 11 U.S.C. § 727(a)(4)

94. By making false statements and omissions in his schedules, statement of financial affairs, meeting of creditors, and in pleadings with the Court, and by presenting or using the false Daufuskie claim, and as may be further revealed through discovery in this adversary proceeding, the Defendant knowingly and fraudulently, in or in connection with the case—(i) made a false oath or account; (ii) presented or used a false claim; or (iii) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to his property or financial affairs.

95. Therefore, the Court should deny the Defendant's discharge under 11 U.S.C. § 727(a)(4).

### FOURTH CAUSE OF ACTION
Denial of Discharge under 11 U.S.C. § 727(a)(6)

96. By violating the Court's chapter 11 operating order, the order allowing the Defendant to file documents electronically, and the order establishing a deadline for the Defendant to file amended schedules, the Defendant refused to obey lawful orders of this Court.

97. Therefore, the Court should deny the Defendant's discharge under 11

U.S.C. § 727(a)(6).

THEREFORE, the BA requests that the Court enter a judgment:

1. Denying the Defendant's discharge; and

2. Granting such other relief as the Court deems proper.

Respectfully submitted on July 11, 2024.

JOHN PAUL H. COURNOYER
U.S. BANKRUPTCY ADMINISTRATOR

By: /s/ John Paul H. Cournoyer
John Paul H. Cournoyer
Bankruptcy Administrator
State Bar No. 42224
101 S. Edgeworth Street
Greensboro, NC 27401
Telephone: (336) 358-4176
jp_cournoyer@ncmba.uscourts.gov