_____
BENJAMIN A. KAHN
UNITED STATES BANKRUPTCY JUDGE

---

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| David Wayne Schamens, | ) | Chapter 7 |
| | ) | Case No. 23-10483 |
|     Debtor. | ) | |
| _____ | ) | |
| | ) | |
| John Paul Hughes Cournoyer, | ) | |
| U.S. Bankruptcy Administrator, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 24-02010 |
| | ) | |
| David Wayne Schamens, | ) | |
| | ) | |
|     Defendant. | ) | |
| _____ | ) | |

**ORDER DENYING MOTION TO DISMISS OR STAY ADVERSARY PROCEEDING**

This adversary proceeding is before the Court on the motion to dismiss, or in the alternative, to stay the adversary proceeding, filed by Defendant, David Wayne Schamens, the debtor in the above-captioned chapter 7 case ("Debtor"), on September 10,

1

2024.  ECF No. 10 (the "Motion").[1]  Debtor is proceeding pro se.[2] Debtor requests that the Court dismiss, or, in the alternative, stay this adversary proceeding pending the outcome of a criminal case against Debtor in the United States District Court for the District of New Jersey (the "New Jersey District Court").  Id. at 1.  For the reasons stated herein, the Court will deny Debtor's Motion.

## I.   JURISDICTION AND AUTHORITY

The Court has jurisdiction over these proceedings under 28 U.S.C. § 1334.  Under 28 U.S.C. § 157, the United States District Court for the Middle District of North Carolina has referred this case and these proceedings to this Court by its Local Rule 83.11. This is a statutorily core proceeding under 28 U.S.C. § 157(b), and the Court has authority to hear and determine this proceeding by final order.  See ECF No. 14, ¶ 8 (and authorities cited therein).  Venue is proper under 28 U.S.C. § 1409.

## II.   PROCEDURAL BACKGROUND

On July 11, 2024, Plaintiff, the U.S. Bankruptcy Administrator (the "BA), commenced this adversary proceeding against Debtor by filing a complaint, ECF No. 1 (the "Complaint"),

---

[1] All "ECF" numbers refer to the above-captioned adversary proceeding (Adv. No. 24-02010) unless otherwise specified.

[2] The Court must construe filings by pro se litigants liberally.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

seeking denial of Debtor's discharge under 11 U.S.C. § 727(a)(2), (3), (4), and (6).  The BA alleges that Debtor failed to disclose assets, liabilities, and pending litigation in his schedules and statement of financial affairs, lied at his meeting of creditors, and presented or used a false claim to prevent the bankruptcy trustee from administering his residential real property.  Id.  On September 10, 2024, Debtor filed his Motion requesting that the Court dismiss or stay the adversary proceeding.  ECF No. 10.  This Court has liberally construed Debtor's Motion, which appears to argue that this adversary proceeding should be dismissed because: (1) the Court lacks subject matter jurisdiction over the BA's claims; (2) the Court lacks personal jurisdiction over Debtor; (3) the Complaint was not timely filed; and (4) the Complaint fails to state a claim upon which relief can be granted.  Id. Alternatively, Debtor argues that this adversary proceeding should be stayed pending the outcome of the criminal case against Debtor in the New Jersey District Court.  Id.  On September 17, 2024, the BA filed a response in opposition to Debtor's Motion, ECF No. 11 (the "Response").

### III. FACTUAL BACKGROUND[3]

**A.  Dugan Judgment**

On August 11, 2015, Guy M. Dugan, Karen Dugan, and the GDM Family Trust (collectively, the "Dugan Plaintiffs") filed a lawsuit against Debtor, Debtor's spouse, and various business entities affiliated with Debtor in the United States District Court for the Western District of North Carolina.  Case No. 15-00366 (W.D.N.C.), ECF No. 1.  On October 2, 2017, default judgment was entered against Debtor, Debtor's spouse, and the affiliated business entities for an aggregate amount over $640,000.00.  Case No. 15-00366 (W.D.N.C.), ECF No. 69 (the "Dugan Judgment").[4]

**B.  Aggie Investment Judgment**

In December 2014, Aggie Investment LLC ("Aggie Investment"), an entity owned or controlled by Guy Dugan, filed a lawsuit in

---

[3] The Court has accepted the factual allegations in the Complaint, ECF No. 1, and the Response, ECF No. 11, as true for purposes of determining whether the Complaint states a claim under Fed. R. Civ. P. 12(b)(6), except those facts of which the Court may take judicial notice.  See Fed. R. Civ. P. 12(b)(6).  "[A] court may take judicial notice of its own records."  Watkins v. Wells Fargo Bank, No. CIV.A. 3:10-1004, 2011 WL 777895, at *3 (S.D.W. Va. Feb. 28, 2011); see, e.g., Anderson v. Fed. Deposit Ins. Corp., 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) (finding that a district court "should properly take judicial notice of its own records" at the motion to dismiss stage); see also Fed. R. Evid. 201(c).  "[B]oth the Supreme Court of the United States and the Fourth Circuit have found that courts may take judicial notice of items or matters in the public record, even at the 12(b)(6) stage of a proceeding."  Watkins, 2011 WL 777895, at *3; see Papasan v. Allain, 478 U.S. 265, 268 n.1 (1986); Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007).

[4] Debtor appealed the Dugan Judgment, Case No. 15-00366 (W.D.N.C.), ECF No. 76, and on October 29, 2020, the Court of Appeals remanded the matter back to the District Court.  Dugan v. Schamens, 833 F. App'x 981 (4th Cir. 2020).  On March 7, 2022, the district court vacated the Dugan Judgment as to one of Debtor's affiliated business entities, but the judgment remained the same in all other respects.  Case No. 15-00366 (W.D.N.C.), ECF No. 108.

state court against Debtor, Debtor's spouse, and other affiliated entities.  Id. ¶ 13.  On June 28, 2016, judgment was entered against Debtor and the other defendants in the amount of $570,179.69 (the "Aggie Judgment").  Id. ¶ 14.  After this judgment, the parties reached a settlement agreement in which Aggie Investment received a deed of trust against residential real property located at 138 Arnold Palmer Drive, Advance, North Carolina (the "Advance Property")[5] in the amount of the Aggie Judgment.  Id. ¶ 22.  Debtor defaulted under the terms of the settlement agreement, id. ¶ 24, and in September 2017, Aggie Investment foreclosed on the Advance Property.  Id. ¶ 25.  Aggie Investment was the purchaser at foreclosure with a bid of $450,000.00 – leaving a portion of the Aggie Judgment unsatisfied. Id.  In December 2019, Debtor purchased residential real property at 812 Northern Shores Point, Greensboro, North Carolina (the "Greensboro Property").[6]  Id. ¶ 26.  Aggie Investment domesticated

---

[5] When Aggie Investment's lawsuit was filed, the Advance Property was held in the name of Invictus Real Estate Investment LLP ("Invictus") – an entity owned or controlled by Debtor.  ECF No. 1, ¶ 15.  However, in January 2015, shortly after Aggie Investment's lawsuit was filed, Debtor signed a warranty deed on behalf of Invictus, transferring the Advance Property to himself in his individual name.  Id. ¶ 16.  In May 2015, a deed of trust, signed by Debtor and granted in favor of "Pillar Capital Partners" ("Pillar Capital") in the amount of $548,876.71 was recorded against the Advance Property.  Id. ¶ 19.  The BA alleges that Pillar Capital did not actually make a loan to Debtor, and that the deed of trust was recorded as an attempt to protect the Advance Property from execution by creditors.  Id. ¶ 20.

[6] In connection with the purchase of the Greensboro Property, Debtor granted to Carter Bank & Trust ("Carter Bank") a deed of trust against the property in the amount of $900,000.00.  Id. ¶ 27.

the Aggie Judgment in Guilford County, North Carolina, thereby creating a judgment lien against the Greensboro Property. Id. ¶ 28. In May 2021, the Guilford County Sheriff provided Debtor with Notice of Execution Sale with respect to the Greensboro Property. Id.

## C. Daufuskie Judgment

On June 25, 2021, after Debtor received the Notice of Execution Sale of the Greensboro Property with respect to the Aggie Judgment, a deed of trust was recorded against the Greensboro Property in favor of Daufuskie Lending Partners, LLC ("Daufuskie"), in the amount of $756,814.70 (the "Daufuskie Deed of Trust").[7] Id. ¶ 29; see also A.P. No. 24-02001, ECF No. 1, p. 6. In February 2022, the Dugan Plaintiffs domesticated the Dugan Judgment in Guilford County, North Carolina. ECF No. 1, ¶ 12. The Daufuskie Deed of Trust references a note dated January 5, 2015.[8] Id. The Dugan Plaintiffs then commenced an action in Guilford County, North Carolina, seeking a determination that the Daufuskie Deed of Trust was fraudulent or otherwise invalid. Id. ¶ 30. Despite discovery requests regarding the invalidity of the Daufuskie Deed of Trust, no documentation supporting its validity

---

[7] Debtor signed the Daufuskie Deed of Trust. Id. ¶ 29.

[8] The BA alleges that Daufuskie did not exist when the note secured by the Daufuskie Deed of Trust was executed or when the deed of trust was recorded. Id. ¶ 35.

was produced in the Guilford County action.  Id. ¶ 39.  On May 12, 2023, judgment was entered in the Guilford County action determining that the Daufuskie Deed of Trust was fraudulent and directing the registrar of deeds to strike it from the public record.[9]  Case No. 23-10483, ECF No. 30-14 (the "Daufuskie Judgment").

**D.  Debtor's prior bankruptcy filings**

Debtor has previously filed successive bankruptcy cases in this Court on May 23, 2022, and August 16, 2022, with each case being dismissed and Debtor failing to take substantial steps to move the cases forward.  Case Nos. 22-10260 & 22-10418, respectively.  In the first case, Debtor listed Daufuskie in his bankruptcy schedules as having a lien encumbering the Greensboro Property in the amount of $350,000.00.  Case No. 22-10260, ECF No. 17, at 18.  The Court dismissed the case on June 30, 2022, for Debtor's failure to obtain credit counseling as required under 11 U.S.C. § 109(h).  Case No. 22-10260, ECF No. 26.  On October 17, 2022, the Court entered its order dismissing Debtor's second case[10] with a 12-month bar to refiling a chapter 13 petition for the

---

[9] Debtor appealed this judgment even though the judgment found that the debt purportedly owed by Debtor to Daufuskie did not exist.  Id. ¶ 32.  Daufuskie did not appeal the judgment.  Id.  Debtor's appeal was dismissed by the North Carolina Court of Appeals on June 20, 2024.  Id.

[10] During Debtor's second bankruptcy case, the Dugan Plaintiffs commenced an adversary proceeding seeking a judgment determining that the Daufuskie Deed of Trust was invalid, unenforceable, and cancelled.  Adv. No. 22-02020, ECF No. 1.

reasons as stated at the hearing held in that case on October 11, 2022. Case No. 22-10418, ECF No. 28. Further, on April 19, 2023, this Court dismissed a chapter 13 case filed by Debtor's spouse with a 180-day bar to refiling a case under title 11, because among other reasons, the Court found that the record indicated the filing was "part of a further use of the bankruptcy system by Debtor and her spouse as a delay and litigation tactic." Case No. 23-10057, ECF No. 58.

**E.    Debtor's current bankruptcy case**

   On September 5, 2023, and while subject to an order barring Debtor from filing a case under chapter 13 due to abuse of the bankruptcy system,[11] Debtor filed a petition for relief under chapter 11. Case No. 23-10483, ECF No. 1. The Court entered its standard chapter 11 operating order, which includes the requirement that Debtor close any preexisting bank accounts, establish a debtor-in-possession depository account, and provide the BA with account information within seven days. Case No. 23-10483, ECF No. 6, ¶ 5. On September 11, 2023, Debtor filed a motion to extend the time allotted under the operating order, Case No. 23-10483, ECF No. 17, and the Court granted the extension, allowing Debtor until September 18, 2023, to establish a deposit account. Case No. 23-10483, ECF No. 21. On September 19, 2023,

---

[11] See Case No. 22-10418, ECF No. 28.

Debtor filed a designation of depository, Case No. 23-10483, ECF No. 24; however, no evidence of any new depository account was ever provided to the BA, in violation of the operating order. ECF No. 1, ¶ 47.

On September 19, 2023, Debtor filed his initial bankruptcy schedules and statement of financial affairs ("SOFA"). Case No. 23-10483, ECF No. 28. In his initial schedules, Debtor listed ownership of a half-interest in the Greensboro Property in the amount of $800,000.00. Id. at 3. The BA alleges that, contrary to the representation in his schedules, Debtor owned 100% of the Greensboro Property. ECF No. 1, ¶ 49. Debtor also indicated that he owned 0% interests in entities listed as "Bold Analytics, Ltd." and "GeniHealth, Inc." Case No. 23-10483, ECF No. 28, at 7. In contrast, Debtor indicated in his SOFA that within the four years prior to filing his petition, Debtor was the owner of at least 5% of the voting or equity securities of both Bold Analytics, Ltd. and GeniHealth, Inc. Id. at 47. Debtor further scheduled electronics valued at $500.00, golf clubs valued at $500.00, and shoes valued at $1,000.00. Id. at 6. Debtor did not schedule any other assets. See id. at 3-12. With regard to scheduled claims, Debtor listed Carter Bank and Daufuskie[12] as holding secured claims against the Greensboro Property. Id. at 18. Debtor scheduled

_____

[12] Daufuskie has not filed a proof of claim in this case or in any of the previous bankruptcy cases filed in this Court by Debtor or his spouse.

unsecured claims belonging to "Dugan et. al.,"[13] Wells Fargo Bank, Chase Bank, Capital One, Discover, and "Duke Energy/Piedmont Nat Gas." Id. at 23-24. Debtor did not schedule any other claims.[14] Id. at 18-25. Debtor also indicated in his schedules that he was the CEO of Bold Analytics, Ltd., with a monthly income of $1,500.00, and that Debtor's non-filing spouse was unemployed with a monthly income of $1,500.00. Id. at 31.

In his SOFA, Debtor indicated that he had no income from any source during 2022 or during the portion of 2023 prior to filing his petition. Id. at 38. In part 4 of the SOFA, Debtor identified only one lawsuit to which he was a party in the year preceding the filing of his petition – a lawsuit described as "fraudulent case" brought by "Dugan, et al [sic]" in the United States District Court for the Western District of North Carolina. Id. at 41. Debtor did not disclose that he is the defendant in a pending civil securities fraud action brought by the Securities and Exchange Commission in the New Jersey District Court, which action alleges that Debtor defrauded at least 16 investors of at least $1.8 million. Id.; see Case No. 22-01219 (D.N.J.). Similarly, Debtor

---

[13] Debtor scheduled the claim of "Dugan et. al." as disputed. Case No. 23-10483, ECF No. 28, at 23.

[14] The BA asserts that Debtor's schedules omit the claims of "Aggie Investment, Theodore Van Leer, Caroline Van Leer, Anne M. Blanken, the Credit Shelter Share Trust, the Lambertsen Charitable Remainder Unitrust, a claim for unpaid costs to the N.C. Court of Appeals, Weeks Hardwood Flooring Inc., and Zayo Group LLC." ECF No. 1, ¶ 55.

did not disclose that he is the defendant in a pending criminal case in the New Jersey District Court for wire fraud, securities fraud, and money laundering.  Case No. 23-00255 (D.N.J) (the "Criminal Case").[15]  Further, Debtor's appeal of the Daufuskie Judgment remained pending at the time Debtor filed his SOFA, but Debtor failed to disclose this information.  Case No. 23-10483, ECF No. 28, at 41; ECF No. 1, ¶¶ 32-33.

On September 20, 2023, the Dugan Plaintiffs and the BA filed motions to convert Debtor's bankruptcy case from chapter 11 to chapter 7.  Case No. 23-10483, ECF Nos. 30 & 31, respectively.  On October 23, 2023, the Court entered its order granting the motions to convert and converting the case to chapter 7 for the reasons set forth on the record at the hearing held on October 17, 2023.  Case No. 23-10483, ECF No. 68.

On October 26, 2023, Debtor filed a motion seeking authority to file documents with the Court electronically.  Case No. 23-10483, ECF No. 78.  The Court entered an order allowing Debtor to submit filings via electronic mail to the courtroom deputy, to be followed by a complete signed original by regular mail within seven business days.  Case No. 23-10483, ECF No. 98.  Debtor violated

---

[15] Debtor's criminal indictment alleges that multiple victims suffered significant losses due to Debtor's wire fraud, securities fraud, and money laundering between 2014 and 2021.  Case No. 23-00255 (D.N.J.), ECF No. 31. Debtor did not list these victims' claims in his schedules.  Case No. 23-10483, ECF No. 28.

this order on multiple occasions. ECF No. 1, ¶ 70. As a result, the court first modified this permission, and ultimately revoked it. Case No. 23-10483, ECF Nos. 116, 117, 126 & 151.

Debtor appeared at the chapter 7 meeting of creditors on November 20, 2023, but refused to answer most of the questions asked, invoking his privilege against self-incrimination. ECF No. 1, ¶ 71. The BA then filed a motion seeking to compel Debtor to answer certain questions at his meeting of creditors. Case No. 23-10483, ECF No. 127. At the hearing on this motion on January 9, 2024, Debtor stated that he needed to file amended schedules. ECF No. 1, ¶ 72. On January 9, 2024, the Court entered an order requiring Debtor to file the amended schedules by January 19, 2024, Case No. 23-10483, ECF No. 134, which was later extended to January 26, 2024. Case No. 23-10483, ECF No. 151. Debtor failed to comply with the order and did not file amended schedules by this deadline.[16]

At the continued meeting of creditors on February 5, 2024, Debtor testified that he had outstanding debt to Daufuskie and/or

---

[16] Debtor filed an amendment to his schedules on January 29, 2024, three days after the deadline set by the Court's order, to add two credit card accounts with negative balances. Case No. 23-10483, ECF No. 164. In February 2024, Debtor amended his Sched. A/B, again listing a half-interest in the Greensboro Property, but this time valuing his interest in the real property at $750,000.00, instead of $800,000.00. Case No. 23-10483, ECF No. 182, at 1; cf. Case No. 23-10483, ECF No. 28, at 3. Debtor also listed a putative cause of action against the realtor authorized to list and market the Greensboro Property for "aiding and abetting in identity theft, and conspiracy." Case No. 23-10483, ECF No. 182, at 8. Debtor did not list any other assets in the amended schedules. See Case No. 23-10483, ECF No. 182.

Pillar Capital, and that he "never had an ownership interest in" Daufuskie or Pillar Capital. ECF No. 1, ¶¶ 80-81. Debtor further testified that the furniture[17] in the Greensboro Property was subject to a note in favor of Pillar Capital. Id. ¶ 78. Debtor never disclosed any furniture or any secured claim or lease in favor of Pillar Capital in his initial or amended schedules. See Case No. 23-10483, ECF Nos. 28, 164 & 182.

On March 8, 2024, the chapter 7 trustee filed a motion to sell the Greensboro Property pursuant to 11 U.S.C. § 363(f). Case No. 23-10483, ECF No. 188. Debtor objected to the sale arguing, inter alia, that the putative Daufuskie Deed of Trust fully encumbered Debtor's interest in the property. See Case No. 23-10483, ECF Nos. 217 & 223. On May 3, 2024, the Court authorized the sale of the Greensboro Property free and clear of the Daufuskie Deed of Trust.[18] Case No. 23-10483, ECF No. 226.

**F.  Daufuskie Adversary Proceeding**

On February 14, 2024, the bankruptcy trustee initiated an adversary proceeding in the above-captioned chapter 7 case by

---

[17] The Complaint alleges that the Greensboro Property contained furniture and other household goods that one would expect in a residence valued at $1,500,000.00. ECF No. 1, ¶ 76.

[18] Under 11 U.S.C. § 363(f), a trustee may sell property of the estate free and clear of any interests in such property of an entity other than the estate, if "such interest is in bona fide dispute." 11 U.S.C. § 363(f)(4). As of the date of the Court's order authorizing the sale of the Greensboro Property, the validity of the Daufuskie Deed of Trust was in bona fide dispute. See Case No. 23-10483, ECF No. 226.

filing a complaint against Daufuskie Lending Partners, LLC.  Adv.
No. 24-02001, ECF No. 1.  The trustee's complaint alleged that
Daufuskie is an artifice and sought entry of a judgment by the
Court deeming that the Daufuskie Deed of Trust is void "or
otherwise avoiding" it under 11 U.S.C. § 544(a).  Id.  Although
not a party to the adversary proceeding, Debtor, proceeding pro
se, filed a motion in the adversary proceeding on March 25, 2024,
requesting that the Court allow Daufuskie additional time to
respond to the complaint.  Adv. No. 24-02001, ECF No. 7.  Debtor
also attached to the motion a letter purporting to be from "Steven
K. Novak" as manager of Daufuskie, asserting that Daufuskie is a
valid Delaware limited liability company.[19]  Id. at 4-5.  On March
26, 2024, the trustee filed an objection to Debtor's motion,
attaching records tending to show that the entity registered as
Daufuskie Lending Partners, LLC was created on March 11, 2024, by
reviving a different dormant Delaware limited liability company
and filing a name change for that entity to Daufuskie Lending
Partners, LLC.  Adv. No. 24-02001, ECF No. 8.  On March 29, 2024,
the Court denied Debtor's motion because the sole named defendant
in the adversary proceeding was Daufuskie, a putative corporate

---

[19] The Complaint asserts that around this time, the trustee received emails from
"Steven K. Novak."  ECF No. 1, ¶ 86.  The trustee requested a phone call with
Mr. Novak but he declined.  Id.  In response, the trustee stated that he
suspected the emails may be Debtor posing as "Steven K. Novak" and that it would
be helpful to speak with Mr. Novak on the phone to dispel that suspicion.  Id.
Mr. Novak declined to speak with the trustee on the phone.  Id.

entity which may not appear before this Court except through licensed counsel — and Debtor is not licensed counsel. Adv. No. 24-02001, ECF No. 11.

On March 26, 2024, the trustee filed a motion seeking entry of default against Daufuskie. Adv. No. 24-02001, ECF No. 9. Two days later, Debtor filed a notice stating that the manager of Daufuskie "was making a substantial filing with the Court via overnight Federal Express." Adv. No. 24-02001, ECF No. 10. On April 1, 2024, an objection to the trustee's motion for default was filed, seeking more time for Daufuskie to respond to the complaint. Adv. No. 24-02001, ECF No. 14. This objection purportedly was filed by "Steven K. Novak" as manager of Daufuskie. Id. On April 9, 2024, the Court entered an order staying the adversary proceeding pending resolution of the prepetition state court proceedings. Adv. No. 24-02001, ECF No. 20.

## IV. DISCUSSION

The Court considers jurisdiction before deciding the merits of the case. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999). Because Defendant also has objected to personal jurisdiction, the Court also will address that at the outset. Id. The Court then will turn to whether the statute of limitations bars the Complaint. Next, the Court will consider the plausibility of the BA's claims that Debtor's discharge should be denied under 11 U.S.C. § 727(a)(2), (3), (4), and (6). Finally, the Court will

15

consider whether this adversary proceeding should be stayed pending the outcome of Debtor's Criminal Case.

## A.   This Court has authority to hear and determine this proceeding by final order.

Debtor asserts, without explanation, that this adversary proceeding should be dismissed for lack of subject matter jurisdiction and lack of personal jurisdiction. ECF No. 10, ¶ 10. The Court already has concluded that it has subject matter jurisdiction and statutory and constitutional authority to enter final orders in this adversary proceeding. ECF No. 14, ¶ 8 (and authorities cited therein).

This Court also has personal jurisdiction over Debtor in this adversary proceeding. Rule 7004(f)[20] provides that "[i]f exercising jurisdiction is consistent with the United States Constitution and laws, serving a summons [under Rule 7004] establishes personal jurisdiction over a defendant . . . in a civil proceeding arising under the Code." Fed. R. Bankr. P. 7004(f). Rule 7004(d) authorizes nationwide service of process in the bankruptcy context, and, therefore, "personal jurisdiction under [Rule] 7004(f) meets constitutional concerns based on the defendant's contacts with the United States, rather than the state where the bankruptcy court is located." In re Tex. Reds, Inc.,

---

[20] All references to "Rule __" herein refer to the Federal Rules of Bankruptcy Procedure, unless otherwise specified.

16

No. 7-04-15995 JS, 2010 WL 1711112, at *4 (Bankr. D.N.M. Apr. 26, 2010). First, Debtor filed a voluntary petition in this Court on September 5, 2023, in which he stated that he resides in Greensboro, North Carolina. Case No. 23-10483, ECF No. 1, at 2. Thus, Debtor "has sufficient contacts with the United States to support the fairness of the exercise of jurisdiction over him by a United States Court." In re Fed. Fountain, Inc., 165 F. 3d 600, 602 (8th Cir. 1999) (quoting Fitzsimmons v. Barton, 589 F.2d 330, 333 (7th Cir. 1979)) (internal quotations omitted). Second, an objection to a debtor's discharge is a proceeding that arises under title 11. 11 U.S.C. § 727(c)(1). Finally, Debtor was served with the Complaint on July 11, 2024. ECF No. 1. The Clerk of Court issued a summons on Debtor on July 12, 2024, ECF No. 3, and the BA timely executed service of the summons on Debtor on July 18, 2024. ECF No. 4. Debtor has not objected to sufficiency of service of the Complaint or the summons and has appeared requesting relief from the Court, thereby waiving any such objection. See ECF No. 10.[21] Therefore, the Court has personal jurisdiction over Debtor.

---

[21] A defendant waives any objection to the sufficiency of service if they do not raise it in their answer or pre-answer motion. Fed. R. Civ. P. 12(h)(1) (made applicable to this adversary proceeding by Rule 7012(b)); see also In re Lefler, 319 B.R. 538, 541 (Bankr. E.D. Tenn. 2004) ("'where a defendant files a pre-answer motion to dismiss or an answer, without raising the defense of [insufficient service of process], he waives any objection to that defect'") (quoting Rauch v. Day & Night Mfg. Corp., 576 F.2d 697, 701 (6th Cir. 1978) (and cases cited therein)).

**B.   The Complaint was timely filed.**

Debtor states in the Motion that the allegations in the Complaint are "barred by the statute of limitations." ECF No. 1, ¶ 3.   The Court will liberally construe this statement as an argument that the Complaint was not timely filed under Rule 4004(a).   Fed. R. Bankr. P. 4004(a) requires that a complaint objecting to a chapter 7 debtor's discharge must be filed within 60 days after the first date set for the meeting of creditors. Fed. R. Bankr. P. 4004(a).   Under Rule 4004(b)(1), this deadline can be extended by the court for cause if a motion to extend is filed prior to the expiration of the deadline.   Fed. R. Bankr. P. 4004(b)(1).   When a case is converted to chapter 7, the time for objections to discharge under Rule 4004 restarts.   Fed. R. Bank. P. 1019(b)(1)(C).

Debtor's bankruptcy case was converted to chapter 7 on October 23, 2023.   Case No. 23-10483, ECF No. 68.   The first date set for Debtor's chapter 7 meeting of creditors was November 20, 2023, and the deadline to object to discharge was January 19, 2024.   Case No. 23-10483, ECF No. 73.   Upon timely motions by the BA, the Court extended the time to object to discharge to July 17, 2024.   See Case No. 23-10483, ECF Nos. 135, 155, 197, 213, 236 & 250.   The BA commenced this action by filing a complaint objecting to Debtor's discharge on July 11, 2024.   ECF No. 1.   Therefore, the Complaint was timely filed, and the BA's claims are not otherwise barred by

any applicable statute of limitations.

**C.    The BA has stated plausible claims that Debtor's discharge should be denied under 11 U.S.C. § 727(a)(2), (3), (4), and (6).**

The Complaint should not be dismissed for failure to state a claim.    Fed. R. Civ. P. 12(b)(6), made applicable to this proceeding by Rule 7012, requires dismissal of all or part of a complaint if it "fail[s] to state a claim upon which relief can be granted."    Fed. R. Civ. P. 12(b)(6).    The standards set forth in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009), guide the Court in determining whether to dismiss a complaint.    A complaint should survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.    The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.    Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. (internal citations omitted).    In other words, the complaint must plead more than "labels [or] conclusions" or a "formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555; Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir.

2009) (citing the same).

11 U.S.C. § 727(a)(4) provides that a debtor's discharge may be denied if the debtor "knowingly and fraudulently" makes a false oath or account, presents a false claim, attempts to gain money, property, or an advantage for acting or forbearing to act, or withholds information from an officer of the estate.  11 U.S.C. § 727(a)(4).  Because it requires knowing and fraudulent action, this section is governed by the pleading specificity requirements of Fed. R. Civ. P. 9, made applicable to this adversary proceeding by Rule 7009.  See, e.g., In re Brien, 208 B.R. 255, 257 (B.A.P. 1st Cir. 1997).  Fed. R. Civ. P. 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  To meet this standard, a plaintiff must describe the "'who, what, when, where, and how' of the alleged fraud."  U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008) (quoting U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc., 336 F.3d 375, 384 (5th Cir. 2003)); see also In re Spanabel, 618 B.R. 495, 507-08 (Bankr. E.D. Mich. 2020) (applying Fed. R. Civ. P. 9(b) to a motion to dismiss a complaint seeking a denial of discharge under § 727(a)(4)).

Therefore, the Court must determine whether the Complaint alleges sufficient and plausible facts that, taken as true, state a plausible claim that Debtor's discharge should be denied under

11 U.S.C. § 727(a)(2), (3), (4), and (6).  Regarding the claim that Debtor's discharge should be denied under § 727(a)(4), the Court must also determine if the allegations of fraud have been plead with sufficient particularity.

1. **The BA states a claim under Fed. R. Civ. P. 12(b)(6) that Debtor's discharge should be denied under 11 U.S.C. § 727(a)(2).**

11 U.S.C. § 727(a)(2) provides that a debtor shall not receive a discharge if "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed . . . property of the debtor, within one year before the . . . filing of the petition; or . . . property of the estate, after the date of the filing of the petition." 11 U.S.C. § 727(a)(2).  The intent required under § 727(a)(2) is "actual intent."  <u>In re McGalliard</u>, 183 B.R. 726, 732 (Bankr. M.D.N.C. 1995).  Actual intent "requires that there be not only a deliberate act, but also that there be a specific intent to harm in the sense of delaying or hindering a creditor."  <u>Id.</u>  Since direct evidence of intent is rare, courts often rely on circumstantial evidence, course of conduct, or reckless indifference to the truth to infer intent.  <u>See</u> <u>In re White</u>, 128 F. App'x 994, 998-99 (4th Cir. 2005).

The Complaint, in asserting that Debtor's discharge be denied pursuant to § 727(a)(2), alleges that Debtor failed to schedule

his full interest in the Greensboro Property, or any interest in the furniture or household goods within the Greensboro Property. ECF No. 1, ¶¶ 49, 75-76. The Complaint further alleges that Debtor failed to disclose in his schedules that he owned business interests in Bold Analytics, Ltd. and GeniHealth, Inc., id. ¶ 50, and falsely stated at his meeting of creditors that he had no ownership interest in Daufuskie or Pillar Capital.[22]  Id. ¶ 81. Debtor's residence contained significant personal property that Debtor did not list on his schedules and for which he paid a moving company over $14,000.00 to move after the sale of the property. Id. ¶ 76. Finally, the Complaint asserts that Debtor falsely stated in filings with the Court that his bankruptcy case was a "no asset case," due to the false Daufuskie claim and the absence of other personal property.  Id. ¶ 83.

These allegations, taken as true and construed in a light most favorable to and drawing all reasonable inferences in favor of the BA,[23] are sufficient to demonstrate that Debtor acted with the requisite intent in transferring, removing, or concealing property of the estate.  The Complaint contains plausible, non-

---

[22] According to the Complaint, Debtor opened a bank account in July 2015 in Pillar Capital's name, signing the documents necessary to open the account as Pillar Capital's member and was the only person with signature authority on the account.  ECF No. 1, ¶ 21.

[23] See King v. Rubenstein, 825 F.3d 206, 212 (4th Cir. 2016) ("In reviewing a dismissal for failure to state a claim, we . . . draw all reasonable inferences in favor of the plaintiff.").

conclusory factual allegations to support the BA's claim that denial of discharge is warranted under § 727(a)(2). Therefore, the Complaint sufficiently states a claim under Fed. R. Civ. P. 12(b)(6) for objection to discharge pursuant to § 727(a)(2).

**2. The BA states a claim under Fed. R. Civ. P. 12(b)(6) that Debtor's discharge should be denied under 11 U.S.C. § 727(a)(3).**

11 U.S.C. § 727(a)(3) provides that a debtor may be denied a discharge if "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information . . . from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."[24] 11 U.S.C. § 727(a)(3).

The Complaint alleges that Debtor falsified documentation purporting to establish that a secured claim existed against the Greensboro Property in favor of Daufuskie. ECF No. 1, ¶¶ 26-39. It further alleges that Debtor filed falsified documents with the Court and sent falsified letters to the trustee. Id. ¶¶ 85-89.

_____

[24] A plaintiff need only allege that the debtor failed to produce adequate records and that those records relate to the debtor's financial condition or business transactions. In re Anderson, No. 03-13586C-7G, 2006 WL 995856, at *6 (Bankr. M.D.N.C. Feb. 13, 2006). The burden of proof then shifts to the debtor to justify the lack of records under all the circumstances of the case. Id. Thus, a plaintiff need not allege in their complaint that a debtor's lack of records was unjustified under the circumstances. See id.; see also In re Abell, 549 B.R. 631, 646, 676 (Bankr. D. Md. 2016) (holding that plaintiff's allegations that debtor refused to provide discovery were sufficient to state a claim for objection to discharge under § 727(a)(3), even when debtor argued they could not gain access to records due to their incarceration).

The Complaint alleges that Debtor prepared these documents and letters and presented them to the Court to support the putative Daufuskie claim while "posing as Steven Novak, or acting in concert with him."[25]  Id. ¶ 89.  The Complaint alleges that Daufuskie did not exist when the note secured by the Daufuskie Deed of Trust was executed or when the deed of trust was recorded, that Pillar Capital, an entity controlled by Debtor, attempted to change its name to Daufuskie Lending Partners, LLC in March 2024, and that despite discovery requests in the prepetition state court litigation, Debtor provided no documentation supporting the validity of the Daufuskie claim.  Id. ¶¶ 17-18, 21, 26-39.  The validity of the Daufuskie claim affects the disposition of the Greensboro Property, which is property of Debtor's bankruptcy estate and relevant to Debtor's financial condition.  The Complaint contains plausible, non-conclusory factual allegations that support the BA's claim that Debtor submitted falsified documents and letters related to the Daufuskie claim.  Therefore, the Complaint states a claim under Fed. R. Civ. P. 12(b)(6) for objection to discharge pursuant to § 727(a)(3).

---

[25] Alternative pleading is permitted under Fed. R. Civ. P. 8(d)(2), made applicable to this adversary proceeding by Rule 7008.  Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically . . . . [T]he pleading is sufficient if any one of them is sufficient.").

**3. The BA states a claim under Fed. R. Civ. P. 12(b)(6) that Debtor's discharge should be denied under 11 U.S.C. § 727(a)(4).**

11 U.S.C. § 727(a)(4) provides that a debtor's discharge may be denied if the debtor, in connection with the case, knowingly and fraudulently "made a false oath or account," "presented or used a false claim," or "withheld from an officer of the estate entitled to possession . . . any recorded information . . . relating to the debtor's property or financial affairs." 11 U.S.C. § 727(a)(4); see also Williamson v. Fireman's Fund Ins. Co., 828 F.2d 249, 251 (4th Cir. 1987) ("The false oath made by the debtor must have related to a material matter."). For purposes of § 727(a)(4), a debtor's petition, schedules, statement of financial affairs, and responses made at a meeting of creditors all constitute statements under oath. In re Worley, 517 B.R. 593, 601 (Bankr. M.D.N.C. 2014). Courts have found the requisite intent to defraud where a debtor's statements contain inconsistencies that exceed the bounds of honest mistake or are incompatible with a debtor's own knowledge and information. Id. at 602; In re Michael, 452 B.R. 908, 919 (Bankr. M.D.N.C. 2011); see also Matter of Beaubouef, 966 F.2d 174, 178 (5th Cir. 1992) (upholding finding that debtor had requisite intent to deceive where debtor's schedules contained multiple falsehoods, and debtor did not remedy falsehoods when he filed amended schedules). Finally, the subject matter of a false oath is material when it concerns the existence

25

and disposition of a debtor's property.  <u>Williamson</u>, 828 F.2d at 252.

The Complaint, in asserting that Debtor's discharge be denied under § 727(a)(4), alleges several instances of Debtor making false statements and omissions in his petition, schedules, SOFA, and meeting of creditors, and that many of Debtor's statements and omissions are inconsistent with one another.  ECF No. 1, ¶¶ 48-65, 74-81.  For example, the Complaint alleges that Debtor failed to schedule several claims asserted against him, failed to disclose pending litigation, falsely scheduled Daufuskie as a secured creditor, scheduled no deposit accounts despite scheduling monthly income, and scheduled no interest in any furniture or household goods within the Greensboro Property despite paying $14,840.00 post-petition to move personal property from the residence.[26]  ECF No. 1, ¶¶ 55-65, 75-76.  The Complaint also alleges that Debtor did not remedy these inconsistencies when he filed his amended schedules.  <u>See</u> <u>id.</u> ¶ 75.  The allegations of inconsistencies coupled with the failure to remedy them plausibly show that Debtor acted with the requisite intent to deceive, and the allegations relate to Debtor's property and financial condition and are

---

[26] The Complaint alleges that, at his meeting of creditors, Debtor testified that the furniture in the Greensboro Property was subject to a note in favor of Pillar Capital, that he "never had an ownership interest in" Pillar Capital, and that he had to "pay rent" to Pillar Capital for the furniture.  ECF No. 1, ¶¶ 78-81.  However, Debtor never disclosed any furniture or any secured claim or lease in favor of Pillar Capital in his schedules.  <u>Id.</u> ¶ 79; <u>see</u> Case No. 23-10483, ECF Nos. 28, 134 & 164.

therefore material matters.  The Complaint contains the specific contents of Debtor's statements or omissions, and the specific documents and meetings in which the statements or omissions were made.  Thus, the Complaint contains plausible, non-conclusory allegations to support the BA's claim that denial of discharge is warranted under § 727(a)(4).  Therefore, the Complaint meets the heightened pleading standard under Fed. R. Civ. P. 9(b) and states a claim under Fed. R. Civ. P. 12(b)(6) for objection to discharge pursuant to § 727(a)(4).

### 4. The BA has stated a claim under Fed. R. Civ. P. 12(b)(6) that Debtor's discharge should be denied under 11 U.S.C. § 727(a)(6).

Under 11 U.S.C. § 727(a)(6), a debtor's discharge may be denied if the debtor has refused to obey an order of the court.  11 U.S.C. § 727(a)(6); see also In re Jordan, 521 F.3d 430, 433-34 (4th Cir. 2008) (holding that lack of compliance with court order must be willful and intentional, and that plaintiff successfully alleges that debtor acted willfully and intentionally by "showing that the debtor received the order in question and failed to comply with its terms.").[27]  "[I]t is totally within the discretion of the bankruptcy court to find a particular violation of the court's order so serious as to require denial of discharge."  Am. Honda

---

[27] The word "refused" requires more than a "showing of a mistake or the inability to comply."  Jordan, 521 F.3d at 434 (citing Jordan v. Smith, 356 B.R. 656, 659-60 (E.D. Va. 2006)).

Fin. Corp. v. Francis, No. CIV. A. 92-0085-B, 1993 WL 208236, at
*2 (W.D. Va. Jan. 14, 1993) (quoting In re Devers, 759 F.2d 751,
755 (9th Cir. 1985)); see, e.g., In re Myers, No. 15-26033-WIL,
2018 WL 4701387, at *16-17 (Bankr. D. Md. Sept. 28, 2018) (finding
that a debtor violated a court order by failing to timely file
monthly operating reports, disclosure statement, and plan of
reorganization but that this violation was insufficient to deny
discharge under § 727(a)(6)); In re Ruppert, No. 05-09135-TJC,
2007 WL 1521182, at *7-9 (Bankr. D. Md. May 21, 2007) (finding
that debtor violated a court order by spending money in his debtor-
in-possession bank account and that such violation warranted a
denial of debtor's discharge under § 727(a)(6)); see also Matter
of Dowell, 61 B.R. 75, 78 (Bankr. W.D. Mo. 1986) ("[I]f the
evidence establishes that the debtor knew or should have known of
the multitude of orders and notices sent to her and disregarded
them, it could hardly be said that her failure and refusal to
attend—or to perform other duties imposed by the court—was
inadvertent or simply by mistake.").

The Complaint alleges that Debtor violated the Court's chapter
11 operating order by failing to timely file a designation of
depository and never providing evidence of any new depository
account to the BA.  ECF No. 1, ¶¶ 46-47; see Case No. 23-10483,
ECF No. 6.  The Complaint further alleges that Debtor violated the
order allowing Debtor to file documents electronically, Case No.

28

23-10483, ECF No. 98, and the order establishing a deadline for Debtor to file amended schedules, Case No. 23-10483, ECF No. 134. ECF No. 1, ¶¶ 70, 73. Each of these orders was properly served on Debtor. See Case No. 23-10483, ECF Nos. 13, 102 & 139. Therefore, Debtor knew or should have known of the duties imposed on him by each of these orders. The facts alleged in the Complaint demonstrate not only that Debtor failed to timely comply with these orders, but further that Debtor refused to obey them altogether. With regard to the operating order, although Debtor late-filed a designation of depository, Case No. 23-10483, ECF No. 24, Debtor never provided any evidence of a new depository account, as required under the order. ECF No. 1, ¶ 47. As to the order regarding Debtor's filing of amended schedules, Debtor's inadequate and late-filed amendment to his schedules merely added two credit card accounts with negative balances and did not correct any prior misstatements or omissions. Case No. 23-10483, ECF No. 164; ECF No. 1, ¶ 74. Finally, on several occasions, Debtor missed the deadline to file signed originals of documents with the Court as required under the electronic filing order, and to such an extent that the Court felt it necessary to revoke the permissions granted to Debtor by this order. Case No. 23-10483, ECF Nos. 116, 117, 126 & 151. The Complaint contains plausible, non-conclusory allegations that, taken together and construed in a light most favorable to the nonmovant, show that Debtor's violations

represent such a disregard for the orders of this Court that they
were not the result of mere mistake or inadvertence. These
violations might not rise to the level sufficient to prevent
discharge when the Court ultimately considers them in its
discretion with all the evidence that may be presented in this
proceeding, but the Court cannot make such a determination on the
current allegations and at this stage of the litigation.
Therefore, the Complaint states a claim under Fed. R. Civ. P.
12(b)(6) for objection to discharge pursuant to § 727(a)(6).

**D.    The Court will not stay this case pending the outcome of
the Criminal Case.**

Finally, Debtor contends that this adversary proceeding should
be stayed pending the outcome of Debtor's criminal prosecution.
ECF No. 10. The Court declines to exercise its discretion to stay
this proceeding. A stay of a civil proceeding pending the outcome
of a criminal proceeding is not constitutionally required but is
permitted when "special circumstances . . . might suggest the
unconstitutionality or even the impropriety of [the] criminal
prosecution." United States v. Kordel, 397 U.S. 1, 12 (1970)
(noting that such circumstances may include the government
bringing a civil action solely to obtain evidence for its criminal
prosecution, or failing to advise defendant in civil proceeding
that it contemplates his criminal prosecution, or a case where
defendant is without counsel in a proceeding investigating the

underlying crime, or reasonably fears pretrial publicity or unfair injury). "Thus, whether to stay a civil action pending resolution of a parallel[28] criminal prosecution is not a matter of constitutional right, but, rather, one of court discretion, that should be exercised when the interests of justice so require." Alcala, 625 F. Supp. 2d at 396 (citing Kordel, 397 U.S. at 12 n.27). Completely staying a pending civil action until a criminal proceeding is resolved is an extraordinary remedy appropriate only in extraordinary circumstances. Weil v. Markowitz, 829 F.2d 166, 174 n.17 (D.C. Cir. 1987).

None of the special circumstances discussed in Kordel exist here. Courts weigh several factors in determining when the interests of justices require a civil action to be stayed during a parallel criminal proceeding.[29] "The most important factor at

---

[28] As discussed herein, this dischargeability proceeding is not properly construed as a "parallel" proceeding to Debtor's criminal indictment, as contemplated by the court in Alcala v. Texas Webb Cnty., 625 F. Supp. 2d 391 (S.D. Tex. 2009), and others as cited below. In Alcala, for example, the criminal prosecution and the civil proceeding stemmed "from the same transaction and occurrence." Id. at 396. Here, although the proceedings are contemporaneous, the allegations giving rise to the claims in this proceeding are not the same transactions for which Debtor is under indictment. Although several of the creditor claims asserted in the underlying bankruptcy case stem from the same transactions that gave rise to the criminal indictment, see Case No. 23-00255, ECF No. 31 (D.N.J.), the allegations in the Complaint are unrelated to the facts giving rise to the creditor claims asserted in the underlying bankruptcy case.

[29] The Fourth Circuit has not yet endorsed any particular set of factors. United States v. Rudy's Performance Parts, Inc., 647 F. Supp. 3d 408, 413 (M.D.N.C. 2022). However, several courts, including the district court in this District, have applied the Ninth Circuit's five factor test from Keating v. Off. of Thrift Supervision, 45 F.3d 322, 325 (9th Cir. 1995), in determining whether to grant a stay. Rudy's Performance Parts, 647 F. Supp. 3d at 413. The five factors are: (1) the interest of the plaintiffs in proceeding expeditiously with the

the threshold is the degree to which the civil issues overlap with the criminal issues." Milton Pollack, <u>Parallel Civil and Criminal Proceedings</u>, 129 F.R.D. 201, 203 (1990); <u>see also</u> <u>Rudy's Performance Parts</u>, 647 F. Supp. 3d at 413-14 (considering "the 'relatedness' of the criminal and civil proceedings, including whether the proceedings 'involve substantially similar issues'") (quoting <u>Ashworth v. Albers Med., Inc.</u>, 229 F.R.D. 527, 530 (S.D.W. Va. 2005)); <u>In re Fin. Federated Title & Tr., Inc.</u>, 252 B.R. 834, 839 (Bankr. S.D. Fla. 2000) (concluding that stay of adversary proceeding was not justified where claims required proof of issues and facts distinct from allegations in defendant's criminal indictment, and that defendant would have "unfettered right to contest the [claims], as well as present those defenses which may negate liability . . . with little risk of incrimination in the [c]riminal [c]ase.").

Thus, the most important question to resolve is the extent to which the issues in this adversary proceeding overlap with the issues in Debtor's criminal prosecution. Reading the criminal indictment and the Complaint together shows that the wrongful conduct alleged in each has no overlap. <u>See</u> ECF No. 1 & Case No.

---

litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay, (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation. <u>Keating</u>, 45 F.3d at 324-25.

23-00255 (D.N.J.), ECF No. 31.  Notably, the criminal indictment alleges that Debtor's crimes took place from "as early as 2014 to in or around June 2021."  Case No. 23-00255 (D.N.J.), ECF No. 31, at 4.  In contrast, the Complaint is based on Debtor's actions during the bankruptcy case, which Defendant did not file until September 5, 2023.  See ECF No. 1 & Case No. 23-10483, ECF No. 1. This adversary proceeding requires proof of entirely different elements and factual predicates than the criminal indictment. "Without a connection between the civil and criminal proceedings, the 'myriad of tangible concerns in favor of a stay, including the protection of a defendant's Fifth Amendment interest and the deleterious effect of civil discovery on the prosecution or defense, dissipates.'"  Rudy's Performance Parts, 647 F. Supp. 3d at 414.  Therefore, the threshold requirement of the existence of substantial similarity between Debtor's civil and criminal proceedings is not satisfied.

Even where some similarity is shown between civil and criminal actions, courts still have found it inappropriate to grant the extraordinary remedy of staying a civil proceeding.  See Phillips v. First Nat. Ins. Co. of Am., No. ADV 10-03075, 2011 WL 2447954, at *3 (S.D. Tex. June 15, 2011) ("The bankruptcy court is not compelled to bide its time simply because the same underlying transaction led first to appellants seeking bankruptcy protection, and, second, to an indictment by a grand jury.").  Debtor was

indicted on March 28, 2023, Case No. 23-00255 (D.N.J.), ECF No. 31, well before he filed his voluntary petition in this Court on September 5, 2023.  Case No. 23-10483, ECF No. 1.  In cases where debtor-defendants have been granted a stay of an adversary proceeding pending the outcome of a criminal action, the debtor filed bankruptcy prior to an investigation or indictment in their criminal matter.  See, e.g., In re Bloom, No. 23-12344-JDL, 2024 WL 4010289 (Bankr. W.D. Okla. Aug. 30, 2024); In re Garsia, No. 09-22233 DHS, 2011 WL 1045295 (Bankr. D.N.J. Mar. 17, 2011); In re Marceca, 131 B.R. 774 (Bankr. S.D.N.Y. 1991).  Due to the lack of any similarity between the issues raised in this adversary proceeding and those raised in the Criminal Case, coupled with the heightened risk of abuse of the protections granted by the Bankruptcy Code and Debtor's voluntary commencement of this case after being indicted, the interests of justice do not weigh in favor of the Court staying this adversary proceeding.

NOW, THEREFORE, it is hereby ORDERED, ADJUDGED, and DECREED that:

1. Debtor's motion to dismiss or stay this adversary proceeding is denied.

2. In addition to service by U.S. mail at Debtor's last known address, the Clerk of Court shall forward a copy of this Order to Debtor at dschamens@tradestreamanalytics.com.

[END OF DOCUMENT]

34

<u>Parties to be Served</u>
24-02010

All parties to this adversary proceeding.