**SO ORDERED.**

**SIGNED this 2nd day of April, 2026.**

_____
BENJAMIN A. KAHN
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| David Wayne Schamens, | ) | |
| | ) | Chapter 7 |
| | ) | Case No. 23-10483 |
| Debtor. | ) | |
| _____ | ) | |
| John Paul H. Cournoyer, | ) | |
| U.S. Bankruptcy Administrator, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 24-02010 |
| | ) | |
| David Wayne Schamens, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**<u>MEMORANDUM OPINION GRANTING MOTION TO STRIKE
DEFENDANT'S ANSWER AND ENTERING DEFAULT JUDGMENT</u>**

This adversary proceeding is before the Court on the Motion to Strike Defendant's Answer, Enter Default Judgment, or for Other Sanctions Under Rule 37, filed by the U.S. Bankruptcy Administrator, John Paul Hughes Cournoyer ("Plaintiff") on March 4, 2025, ECF No. 36, and the Court's Order on Motion by Bankruptcy Administrator for Sanctions entered on June 20, 2025.  ECF No. 49.

1

At the hearing, Plaintiff and David Wayne Schamens ("Defendant") appeared.  Defendant is proceeding pro se.  Due to Defendant's persistent and willful failure to engage in the pre-trial process and to comply with the orders of the Court, the Court will grant Plaintiff's motion, strike Defendant's answer, and enter default judgment, denying a discharge to Defendant.

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334.  Under 28 U.S.C. § 157(a), the United States District Court for the Middle District of North Carolina has referred the above-captioned bankruptcy case and this adversary proceeding to this Court by its Local Rule 83.11.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(J) and the Court has constitutional and statutory authority to hear and determine this proceeding by final order.  See ECF No. 14, ¶ 8 (and authorities cited therein).  Venue is proper under 28 U.S.C. § 1409.  The Court has personal jurisdiction over Defendant.  See ECF No. 19 at 16-17.

## PROCEDURAL BACKGROUND

On July 11, 2024, Plaintiff commenced this adversary proceeding seeking denial of Defendant's discharge under 11 U.S.C. § 727(a)(2), (3), (4) & (6).  ECF No. 1.  Plaintiff alleges that Defendant failed to disclose assets, liabilities, and pending litigation in his schedules and statement of financial affairs,

2

knowingly and fraudulently testified at his meeting of creditors, and presented or used a false claim in an attempt to prevent the bankruptcy trustee from administering his residential real property, among other things.  See id.  On August 12, 2024, Defendant filed a timely motion to extend time to file an answer, ECF No. 5, which was granted through September 10, 2024.  ECF No. 6.  On September 10, 2024, Defendant filed a motion to dismiss or stay the adversary proceeding.  ECF No. 10.  Plaintiff filed a response to Defendant's motion to dismiss or stay the adversary proceeding on September 17, 2024, ECF No. 11, and on December 13, 2024, the Court entered an order denying Defendant's motion and determining that the complaint plausibly stated claims for relief under § 727.  ECF No. 19.  Defendant timely filed an answer.  ECF No. 28.

Before the Court entered its order denying the motion to dismiss, the parties filed a joint scheduling memorandum, setting November 1, 2024, as the deadline for Defendant to file his initial disclosures, and February 15, 2025, as the date on which discovery must be completed.  ECF Nos. 13 & 14.  On November 15, 2024, Plaintiff issued written discovery requests to Defendant, including requests for admission, interrogatories, and requests for production of documents.  ECF No. 36, at 9-18 (collectively the "Discovery Requests").  Defendant failed to timely file his initial disclosures or to respond to any of these discovery

3

requests.  Having missed these deadlines, Plaintiff and Defendant informally agreed to extend the deadlines to December 2, 2024; Defendant still did not provide his initial disclosures and failed to respond to the Discovery Requests.  ECF No. 31, ¶ 3.

On January 15, 2025, Plaintiff filed a motion to compel Defendant to make initial disclosures and respond to Plaintiff's interrogatories and requests for production.  ECF No. 31.  On January 22, 2025, the Court held a hearing on Plaintiff's motion to compel.  ECF No. 33.  At that hearing, Defendant requested that all deadlines in the scheduling order, including the deadline for Defendant to file his initial disclosures, be extended by sixty days.  On January 23, 2025, the Court entered an order amending the scheduling order and directing Defendant to provide initial disclosures and respond to the outstanding discovery requests within thirty days of the date of the order, which was more time than was requested by Defendant at the hearing.  ECF No. 34 (the "January 23 Order").

Over a year ago, on March 4, 2025, Plaintiff filed a motion requesting sanctions under Rule 37, including the striking of Defendant's answer and entry of default judgment.  ECF No. 36.  On March 21, 2025, the Clerk of Court issued a Notice of Right to Respond to Dispositive Motion, setting April 4, 2025, as the deadline for Defendant to respond to Plaintiff's motion for sanctions, and providing Defendant notice that failure to timely

4

respond could result in entry of default judgment, among other things.  ECF No. 37.

On April 4, 2025, Defendant filed a motion requesting an extension of time to file a response to Plaintiff's motion, ECF No. 39, and although Defendant failed to establish cause necessary for granting such a motion, the Court granted an extension through April 15, 2025.  ECF No. 40.  On April 15, 2025, Defendant filed a second motion requesting an extension of time to file a response in order to confer with his counsel representing him in the criminal proceeding discussed below.  ECF No. 43.  The Court granted Defendant's second motion for an extension of time through April 22, 2025, which was more time than Defendant requested, and provided that the Court would not grant further extensions absent extraordinary circumstances.  ECF No. 44.  On April 22, 2025, Defendant filed a reply to Plaintiff's motion for sanctions and attached as an exhibit his purported discovery response.  ECF No. 46, at 5-7.  At the hearing on Plaintiff's motion for sanctions under Rule 37, Defendant indicated that he was subject to an order from the United States District Court for the District of New Jersey prohibiting him from using computers.  See ECF No. 49, at 5-6; United States v. Schamens et al., Case No. 2:22-mj-10299-JBC-1 (D.N.J.).

The Court conducted an evidentiary hearing on Plaintiff's motion to compel on May 28, 2025.  On June 20, 2025, the Court

5

issued an order (the "June 20 Order") determining that: (1) Defendant had waived objections to Plaintiff's interrogatories and requests for production of documents, ECF No. 49, at 11; (2) Defendant failed to verify his interrogatory responses, and they were therefore invalid, in addition to their substantive insufficiency, id. at 8; (3) Defendant still had not provided his initial disclosures, id. at 9; (4) Defendant's responses did not constitute a good faith attempt to comply with Plaintiff's requests, id.; (5) Defendant "has engaged in a pattern of dilatory and bad faith conduct throughout this adversary proceeding and the underlying case," id.; and (6) despite his bad faith, the Court would not yet deem Defendant to have admitted to the requests for admission, but Defendant's failure to respond sufficiently in the future might result in the Court deeming the requests admitted. Id. at 12.

The Court ordered Defendant to respond within thirty days to all of Plaintiff's interrogatories and to Plaintiff's requests for production of documents numbers 1-7 and 10. Id. at 13. The Court further explained that Defendant's inability to use a computer or the 2021 seizure related to the criminal case were not valid excuses for failure to comply. See id. at 10-11, 14-15. The Court set a compliance hearing on July 22, 2025, and again warned Defendant that failure to comply could result in sanctions, including striking the responses to Plaintiff's request for

admission and deeming those requests admitted, striking his answer, entering default judgment in favor of Plaintiff, and denying his discharge.  Id. at 15-17.

The deadline for Defendant to comply with the June 20 Order expired.  The Court directed Defendant to appear at a compliance hearing on July 22, 2025, and show through admissible evidence, rather than statements to the Court, all reasonable efforts made to obtain information from sources other than through Defendant's use of a computer or demonstrate why any requested information is unavailable through means other than the use of a computer.  Id. at 15.

Defendant appeared at the compliance hearing but did not present admissible evidence and conceded that he had not made any effort to comply with the June 20 Order, including without limitation supplementing or verifying the responses to Plaintiff's interrogatories.  ECF No. 53, at 8.  On July 31, 2025, the Court entered an order further continuing the compliance hearing to September 9, 2025, and finding Defendant in contempt of both the January 23 Order and the June 20 Order and indicating that Defendant's contempt is continuing.  Id. at 9-10.  Defendant was warned again that sanctions for contempt could include entry of a default judgment denying his discharge.  Id. at 11.  At Defendant's request, the Court again continued the compliance hearing to October 28, 2025.  ECF No. 56, at 8.

The day before the continued compliance hearing, Defendant once again requested a continuance, claiming that he had only recently learned of the continuance date, and because it conflicted with a concurrent eviction proceeding ongoing in the Davie County State Court for which the Court determined that the automatic stay did not apply.  ECF No. 59, at 1-2; see also Case No. 23-10483, ECF No. 293.  The Court found that, according to the record, "Defendant's claim to have discovered the date of the hearing belatedly is again inaccurate."  ECF No. 60, at 2.  Nevertheless, the Court granted the continuance due to Defendant's documented medical issues and the conflicting state court proceeding regarding his residence.  Id. at 3.  The Court set the continued compliance hearing for November 25, 2025.  Id.

On November 21, 2025, Defendant filed a motion representing that he would be unable to attend the November 25 hearing because of medical issues and requesting to appear via Zoom.  ECF No. 63. The Court again continued the hearing to January 6, 2026.  ECF No. 64.  A day before the January 6 hearing, Defendant again untimely requested the hearing be held via Zoom.  Despite the untimeliness, the Court permitted the appearance.  ECF No. 67.  Although permitted to appear remotely, Defendant did not appear at the January 6 hearing.  Despite proper notice of the hearing and Defendant's unexplained absence, the Court again continued the hearing to January 21, 2026.  ECF No. 68.  At the January 6 hearing,

8

Plaintiff noted that "over 400 days hav[e] passed since the discovery requests were issued, and [they] still have not been complied with." Id. at 00:02:13-00:02:23. When the Court asked whether Defendant had produced any additional information or responses to interrogatories since the last order, Plaintiff responded that he had not. Id. at 00:02:25-00:02:33.

At the January 21, 2026, hearing,[1] Defendant testified and admitted that he still had not attempted to comply with the discovery requests or the Court's June 20 Order, and despite the Court's prior detailed orders and his failure even to attempt to respond, contended that he did not understand what was required of him.[2] Nevertheless, Defendant requested that the Court provide Defendant and Plaintiff with additional time to resolve this adversary proceeding by consent, and that no Opinion be issued on Plaintiff's motions prior to February 18, 2026. January 21, 2026, hearing, 00:23:38-00:23:50. On March 24, 2026, thirty-four days after this Court indicated that an order may be entered, Defendant sent an email to the Deputy Clerk requesting more time to resolve this adversary proceeding by consent. Defendant again represented that his medical issues hindered his attempt to consensually

---

[1] Because it contained discussion of Defendant's medical status, the audio recording of this hearing is not included on the publicly available docket.

[2] "I don't even know what you want, . . . whatever you want, I don't have." January 21, 2026, Hearing, 00:15:00-00:15:40.

resolve this adversary proceeding, and that additional time may result in the voluntary resolution of this case.  On March 24, 2026, the Court yet again granted Defendant an additional seven days, up to and including March 31, 2026, to resolve this adversary proceeding by consent.  ECF No. 70.  Failing to find a consensual resolution to the satisfaction of all parties, on April 1, 2026, Defendant once again sent an email to the Deputy Clerk requesting a hearing on further matters prior to entry of this Order.  As the Court indicated in the March 24 order, the Court will not further delay its ruling.

## FACTUAL BACKGROUND[3]

Because an understanding of the background in this case and the underlying claims is necessary to assess the materiality of the Defendant's misstatements and obfuscation in these proceedings, the Court will briefly summarize that history.

### A. Dugan Judgment

On August 11, 2015, Guy M. Dugan, Karen Dugan, and the GDM

---

[3] As a result of striking Defendant's answer as set forth below, the Court has accepted the factual allegations in the complaint, ECF No. 1, and the response, ECF No. 11, as true.  Opportunities Dev. Grp., LLC v. Andruss, Case No. 1:14-cv-00062, 2015 U.S. Dist. LEXIS 57614, at *12 (E.D. Va. Mar. 3, 2015) (citing Fed. R. Civ. P. 8(b)(6); see also Anderson v. Found. for Advancement, 155 F.3d 500, 506 (4th Cir. 1998) (holding that the district court erred in granting default where complaint failed to state a claim).  The Court also has deemed Plaintiff's requests for admission as admitted.  In addition, the Court has taken judicial notice of its own records and the record of this proceeding and the main bankruptcy case.  See, e.g., Anderson v. Fed. Deposit Ins. Corp., 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) (finding that a district court "should properly take judicial notice of its own records").

Family Trust (collectively, the "Dugan Plaintiffs") filed a lawsuit against Defendant, Defendant's spouse, and various business entities affiliated with Defendant in the United States District Court for the Western District of North Carolina. Case No. 15-00366 (W.D.N.C.), ECF No. 1. On October 2, 2017, default judgment was entered against Defendant, Defendant's spouse, and the affiliated business entities for an aggregate amount over $640,000.00. Case No. 15-00366 (W.D.N.C.), ECF No. 69 (the "Dugan Judgment").[4]

## B. Aggie Investment Judgment

In December 2014, Aggie Investment LLC ("Aggie Investment"), an entity owned or controlled by Guy Dugan, filed a lawsuit in state court against Defendant, Defendant's spouse, and other affiliated entities. ECF No. 1, ¶ 13. On June 28, 2016, judgment was entered against Defendant and the other defendants in the amount of $570,179.69 (the "Aggie Judgment"). Id. ¶ 14. After this judgment, the parties reached a settlement agreement in which Aggie Investment received a deed of trust against residential real property located at 138 Arnold Palmer Drive, Advance, North

---

[4] Defendant appealed the Dugan Judgment, Case No. 15-00366 (W.D.N.C.), ECF No. 76, and on October 29, 2020, the Court of Appeals remanded the matter back to the District Court. Dugan v. Schamens, 833 F. App'x 981 (4th Cir. 2020). On March 7, 2022, the district court vacated the Dugan Judgment as to one of Defendant's affiliated business entities, but the judgment remained the same in all other respects. Case No. 15-00366 (W.D.N.C.), ECF No. 108.

Carolina (the "Advance Property")[5] in the amount of the Aggie Judgment. Id. ¶ 22. Defendant defaulted under the terms of the settlement agreement, id. ¶ 24, and in September 2017, Aggie Investment foreclosed on the Advance Property. Id. ¶ 25. Aggie Investment was the purchaser at foreclosure with a bid of $450,000.00 – leaving a portion of the Aggie Judgment unsatisfied. Id. In December 2019, Defendant purchased residential real property at 812 Northern Shores Point, Greensboro, North Carolina (the "Greensboro Property").[6] Id. ¶ 26. Aggie Investment domesticated the Aggie Judgment in Guilford County, North Carolina, thereby creating a judgment lien against the Greensboro Property. Id. ¶ 28. In May 2021, the Guilford County Sheriff provided Defendant with Notice of Execution Sale with respect to the Greensboro Property. Id.

**C. Daufuskie Judgment**

On June 25, 2021, after Defendant received the Notice of

---

[5] When Aggie Investment's lawsuit was filed, the Advance Property was held in the name of Invictus Real Estate Investment LLP ("Invictus") – an entity owned or controlled by Defendant. ECF No. 1, ¶ 15. In January 2015, shortly after Aggie Investment's lawsuit was filed, Defendant signed a warranty deed on behalf of Invictus, transferring the Advance Property to himself in his individual name. Id. ¶ 16. In May 2015, a deed of trust, signed by Defendant and granted in favor of "Pillar Capital Partners" ("Pillar Capital") in the amount of $548,876.71 was recorded against the Advance Property. Id. ¶ 19. Pillar Capital did not actually make a loan to Defendant, and that the deed of trust was recorded as an attempt to protect the Advance Property from execution by creditors. Id. ¶ 20.

[6] In connection with the purchase of the Greensboro Property, Defendant granted to Carter Bank & Trust ("Carter Bank") a deed of trust against the property in the amount of $900,000.00. Id. ¶ 27.

Execution Sale of the Greensboro Property with respect to the Aggie Judgment, a deed of trust was recorded against the Greensboro Property in favor of Daufuskie Lending Partners, LLC ("Daufuskie"), in the amount of $756,814.70 (the "Daufuskie Deed of Trust").[7]  Id. ¶ 29; see also A.P. No. 24-02001, ECF No. 1, at 6.  In February 2022, the Dugan Plaintiffs domesticated the Dugan Judgment in Guilford County, North Carolina.  ECF No. 1, ¶ 12. The Daufuskie Deed of Trust references a note dated January 5, 2015.[8]  Id. ¶ 29.  The Dugan Plaintiffs then commenced an action in Guilford County, North Carolina, seeking a determination that the Daufuskie Deed of Trust was fraudulent or otherwise invalid. Id. ¶ 30.  Despite discovery requests regarding the invalidity of the Daufuskie Deed of Trust, the state court found that Defendant did not produce any documentation supporting its validity in the Guilford County action.  Id. ¶ 39.  On May 12, 2023, the state court entered judgment in the Guilford County action determining that the Daufuskie Deed of Trust was fraudulent and directing the registrar of deeds to strike it from the public record.[9]  Case No.

---

[7] Defendant signed the Daufuskie Deed of Trust.  Id. ¶ 29.

[8] Daufuskie did not exist when the note secured by the Daufuskie Deed of Trust was executed or when the deed of trust was recorded.  Id. ¶ 35.

[9] Defendant appealed this judgment even though he contended that Daufuskie was a third party and even though the judgment determined that the putative claim against him was invalid.  Id. ¶ 32.  Daufuskie did not appeal the judgment. Id.  On November 14, 2023, the Court entered its order modifying the automatic stay to permit the state court proceedings brought by the Dugans against Daufuskie to be brought to conclusion and final judgment.  Case No. 23-10483,

23-10483, ECF No. 30-14 (the "Daufuskie Judgment").

**D. Defendant's prior bankruptcy filings**

Defendant has previously filed successive bankruptcy cases in this Court on May 23, 2022, and August 16, 2022, with each case being dismissed and Defendant failing to take substantial steps to move the cases forward. Case Nos. 22-10260 & 22-10418, respectively. In the first case, Defendant listed Daufuskie in his bankruptcy schedules as having a lien encumbering the Greensboro Property in the amount of $350,000.00. Case No. 22-10260, ECF No. 17, at 18. The Court dismissed the case on June 30, 2022, for Defendant's failure to obtain credit counseling as required under 11 U.S.C. § 109(h). Case No. 22-10260, ECF No. 26. On October 17, 2022, the Court entered its order dismissing Defendant's second case[10] with a 12-month bar to refiling a chapter 13 petition for the reasons as stated at the hearing held in that case on October 11, 2022. Case No. 22-10418, ECF No. 28. Further, on April 19, 2023, this Court dismissed a chapter 13 case filed by Defendant's spouse with a 180-day bar to refiling a case under title 11, because among other reasons, the Court found that the record indicated the filing was "part of a further use of the

---

ECF No. 100. Defendant's appeal was dismissed by the North Carolina Court of Appeals on June 20, 2024, and the state court judgment determining that the Daufuskie deed was fraudulent and invalid is final. <u>Id.</u>

[10] During Defendant's second bankruptcy case, the Dugan Plaintiffs commenced an adversary proceeding seeking a judgment determining that the Daufuskie Deed of Trust was invalid, unenforceable, and cancelled. Adv. No. 22-02020, ECF No. 1.

bankruptcy system by Defendant and her spouse as a delay and litigation tactic."  Case No. 23-10057, ECF No. 58.

## E. Defendant's current bankruptcy case

On September 5, 2023, and while subject to the order barring Defendant from filing a case under chapter 13 due to abuse of the bankruptcy system,[11] Defendant filed a petition for relief under chapter 11, commencing the underlying bankruptcy case.  Case No. 23-10483, ECF No. 1.  The Court entered its chapter 11 operating order, which includes the requirement that Defendant close any preexisting bank accounts, establish a debtor-in-possession depository account, and provide the bankruptcy administrator ("BA") with account information within seven days.  Case No. 23-10483, ECF No. 6, ¶ 5.  On September 11, 2023, Defendant filed a motion to extend the time allotted under the operating order, Case No. 23-10483, ECF No. 17, and the Court granted the extension, allowing Defendant until September 18, 2023, to establish a deposit account.  Case No. 23-10483, ECF No. 21.  On September 19, 2023, Defendant filed a designation of depository, Case No. 23-10483, ECF No. 24; however, Defendant never provided any evidence of any new depository account to the BA, in violation of the operating order.  ECF No. 1, ¶ 47.

On September 19, 2023, Defendant filed his initial bankruptcy

---

[11] See Case No. 22-10418, ECF Doc. 28.

schedules and statement of financial affairs ("SOFA").  Case No. 23-10483, ECF No. 28.  In his initial schedules, Defendant listed ownership of a half-interest in the Greensboro Property in the amount of $800,000.00.  Id. at 3. Contrary to the representation in his schedules, Defendant owned 100% of the Greensboro Property. ECF No. 1, ¶ 49.  Defendant also indicated that he owned 0% interests in entities listed as "Bold Analytics, Ltd." and "GeniHealth, Inc."  Case No. 23-10483, ECF No. 28, at 7.  In contrast, Defendant indicated in his SOFA that within the four years prior to filing his petition, Defendant was the owner of at least 5% of the voting or equity securities of both Bold Analytics, Ltd. and GeniHealth, Inc.  Id. at 47.  Defendant further scheduled electronics valued at $500.00, golf clubs valued at $500.00, and shoes valued at $1,000.00.  Id. at 6.  Defendant did not schedule any other assets.  See id. at 3-12.  With regard to scheduled claims, Defendant listed Carter Bank and Daufuskie[12] as holding secured claims against the Greensboro Property.  Id. at 18. Defendant scheduled unsecured claims belonging to "Dugan et. al.,"[13] Wells Fargo Bank, Chase Bank, Capital One, Discover, and "Duke Energy/Piedmont Nat Gas."  Id. at 23-24.  Defendant did not

---

[12] Daufuskie has not filed a proof of claim in this case or in any of the previous bankruptcy cases filed in this Court by Defendant or his spouse.

[13] Defendant scheduled the claim of "Dugan et. al." as disputed.  Case No. 23-10483, ECF No. 28, at 23.

16

schedule any other claims.[14]   Id. at 18-25.   Defendant also indicated in his schedules that he was the CEO of Bold Analytics, Ltd., with a monthly income of $1,500.00, and that Defendant's non-filing spouse was unemployed with a monthly income of $1,500.00.  Id. at 31.

In his SOFA, Defendant indicated that he had no income from any source during 2022 or during the portion of 2023 prior to filing his petition.  Id. at 38.  In part 4 of the SOFA, Defendant identified only one lawsuit to which he was a party in the year preceding the filing of his petition – a lawsuit described as "fraudulent case" brought by "Dugan, et al [sic]" in the United States District Court for the Western District of North Carolina. Id. at 41.  Defendant did not disclose that he was the defendant in a pending civil securities fraud action brought by the Securities and Exchange Commission in the New Jersey District Court, which action alleges that Defendant defrauded at least 16 investors of at least $1.8 million.  Id.; see Securities and Exchange Commission v. Schamens, No. 22-01219 (D.N.J.). Similarly, Defendant did not disclose that he is the defendant in a pending criminal case in the New Jersey District Court for wire

---

[14] The BA asserts that Defendant's schedules omit the claims of "Aggie Investment, Theodore Van Leer, Caroline Van Leer, Anne M. Blanken, the Credit Shelter Share Trust, the Lambertsen Charitable Remainder Unitrust, a claim for unpaid costs to the N.C. Court of Appeals, Weeks Hardwood Flooring Inc., and Zayo Group LLC."  ECF No. 1, ¶ 55.

17

fraud, securities fraud, and money laundering.  United States v. Schamens, Case No. 23-00255 (D.N.J) (the "Criminal Case").[15] Further, Defendant's appeal of the Daufuskie Judgment remained pending at the time Defendant filed his SOFA, but Defendant failed to disclose this information.  Case No. 23-10483, ECF No. 28, at 41; ECF No. 1, ¶¶ 32-33.

On September 20, 2023, the Dugan Plaintiffs and the BA filed motions to convert Defendant's bankruptcy case from chapter 11 to chapter 7.  Case No. 23-10483, ECF Nos. 30 & 31.  On October 23, 2023, the Court granted the motions and converted the case to chapter 7 for the reasons set forth on the record at the hearing held on October 17, 2023.  Case No. 23-10483, ECF No. 68.

On October 26, 2023, Defendant filed a motion seeking authority to file documents with the Court electronically.  Case No. 23-10483, ECF No. 78.  The Court entered an order allowing Defendant to submit filings via electronic mail to the courtroom deputy, to be followed by a complete signed original by regular mail within seven business days.  Case No. 23-10483, ECF No. 98. Defendant violated this order on multiple occasions.  ECF No. 1, ¶ 70.  As a result, the court first modified this permission, and

---

[15] Defendant's criminal indictment alleges that multiple victims suffered significant losses due to Defendant's wire fraud, securities fraud, and money laundering between 2014 and 2021.  Case No. 23-00255 (D.N.J.), ECF No. 31. Defendant did not list these victims' claims in his schedules.  Case No. 23-10483, ECF No. 28.

ultimately revoked it after continued violations.  Case No. 23-10483, ECF Nos. 116, 117, 126 & 151.

Defendant appeared at the chapter 7 meeting of creditors on November 20, 2023, but refused to answer most of the questions asked, invoking his privilege against self-incrimination.  ECF No. 1, ¶ 71.  The BA then filed a motion seeking to compel Defendant to answer certain questions at his meeting of creditors.  Case No. 23-10483, ECF No. 127.  At the hearing on this motion on January 9, 2024, Defendant stated that he needed to file amended schedules.  ECF No. 1, ¶ 72.  On January 9, 2024, the Court entered an order requiring Defendant to file the amended schedules by January 19, 2024, Case No. 23-10483, ECF No. 134, which was later extended to January 26, 2024.  Case No. 23-10483, ECF No. 151.  Defendant failed to comply with the order and did not file amended schedules by this deadline.[16]

At the continued meeting of creditors on February 5, 2024, Defendant testified that he had outstanding debt to Daufuskie and/or Pillar Capital, and that he "never had an ownership interest

---

[16] Defendant filed an amendment to his schedules on January 29, 2024, three days after the deadline set by the Court's order, to add two credit card accounts with negative balances.  Case No. 23-10483, ECF No. 164.  In February 2024, Defendant amended his Sched. A/B, again listing a half-interest in the Greensboro Property, but this time valuing his interest in the real property at $750,000.00, instead of $800,000.00.  Case No. 23-10483, ECF No. 182, at 1; cf. Case No. 23-10483, ECF No. 28, at 3.  Defendant also listed a putative cause of action against the realtor authorized to list and market the Greensboro Property for "aiding and abetting in identity theft, and conspiracy."  Case No. 23-10483, ECF No. 182, at 8.  Defendant did not list any other assets in the amended schedules.  See Case No. 23-10483, ECF No. 182.

in" Daufuskie or Pillar Capital.  ECF No. 1, ¶¶ 80-81.  Defendant further testified that the furniture[17] in the Greensboro Property was subject to a note in favor of Pillar Capital.  Id. ¶ 78. Defendant never disclosed any furniture or any secured claim or lease in favor of Pillar Capital in his initial or amended schedules.  See Case No. 23-10483, ECF Nos. 28, 164 & 182.

On March 8, 2024, the chapter 7 trustee filed a motion to sell the Greensboro Property pursuant to 11 U.S.C. § 363(f).  Case No. 23-10483, ECF No. 188.  Defendant objected to the sale arguing, inter alia, that the putative Daufuskie Deed of Trust fully encumbered Defendant's interest in the property.  See Case No. 23-10483, ECF Nos. 217 & 223.  On May 3, 2024, the Court authorized the sale of the Greensboro Property free and clear of the Daufuskie Deed of Trust.[18]  Case No. 23-10483, ECF No. 226.

**F. Daufuskie Adversary Proceeding**

On February 14, 2024, and while Defendant's appeal of the state court judgment against Daufuskie was pending, the bankruptcy trustee initiated an adversary proceeding in the above-captioned

---

[17] The complaint alleges that the Greensboro Property contained furniture and other household goods that one would expect in a residence valued at $1,500,000.00.  ECF No. 1, ¶ 76.

[18] Under 11 U.S.C. § 363(f), a trustee may sell property of the estate free and clear of any interests in such property of an entity other than the estate, if "such interest is in bona fide dispute."  11 U.S.C. § 363(f)(4).  As of the date of the Court's order authorizing the sale of the Greensboro Property, the validity of the Daufuskie Deed of Trust was in bona fide dispute.  See Case No. 23-10483, ECF No. 226.

chapter 7 case by filing a complaint against Daufuskie Lending Partners, LLC. Adv. No. 24-02001, ECF No. 1. In his complaint, the trustee alleged that Daufuskie is an artifice and sought entry of a judgment by the Court deeming that the Daufuskie Deed of Trust is void "or otherwise avoiding" it under 11 U.S.C. § 544(a). Id. Although not a party to the adversary proceeding, Defendant, proceeding pro se, filed a motion in the adversary proceeding on March 25, 2024, requesting that the Court allow Daufuskie additional time to respond to the complaint. Adv. No. 24-02001, ECF No. 7. Defendant also attached to the motion a letter purporting to be from "Steven K. Novak" as manager of Daufuskie, asserting that Daufuskie is a valid Delaware limited liability company.[19] Id. at 4–5. On March 26, 2024, the trustee filed an objection to Defendant's motion, attaching records tending to show that the entity registered as Daufuskie Lending Partners, LLC was created on March 11, 2024, by reviving a different dormant Delaware limited liability company and filing a name change for that entity to Daufuskie Lending Partners, LLC.[20] Adv. No. 24-02001, ECF No.

---

[19] The Complaint asserts that around this time, the trustee received emails from "Steven K. Novak." ECF No. 1, ¶ 86. The trustee requested a phone call with Mr. Novak, but he declined. Id. In response, the trustee stated that he suspected the emails may be Defendant posing as "Steven K. Novak" and that it would be helpful to speak with Mr. Novak on the phone to dispel that suspicion. Id. Mr. Novak declined to speak with the trustee on the phone. Id.

[20] Defendant is deemed to have admitted that he caused Pillar Capital Partners LLC to change its name to Daufuskie Lending Partners LLC in March 2024, and that Daufuskie Lending Partners LLC did not exist prior to November 7, 2023. ECF No. 36, at 13. Defendant now contends that Daufuskie and Pillar have always been the same entity. See, e.g., Case No. 23-10483, at ECF No. 223, at ¶ 12.

21

8.  On March 29, 2024, the Court denied Defendant's motion because the sole named defendant in the adversary proceeding was Daufuskie, a putative corporate entity which may not appear before this Court except through licensed counsel — and Defendant is not licensed counsel.  Adv. No. 24-02001, ECF No. 11.

On March 26, 2024, the trustee filed a motion seeking entry of default against Daufuskie.  Adv. No. 24-02001, ECF No. 9.  Two days later, Defendant filed a notice stating that the manager of Daufuskie "was making a substantial filing with the Court via overnight Federal Express."  Adv. No. 24-02001, ECF No. 10.  On April 1, 2024, an objection to the trustee's motion for default was filed, seeking more time for Daufuskie to respond to the complaint.  Adv. No. 24-02001, ECF No. 14.  This objection was delivered to the court via Federal Express and was purportedly filed by "Steven K. Novak" as manager of Daufuskie.  Id.  On April 9, 2024, the Court entered an order staying the adversary proceeding pending resolution of the prepetition state court proceedings.  Adv. No. 24-02001, ECF No. 20.  Thereafter, the state court judgment determining that the Daufuskie deed was fraudulent and invalid became final, and the trustee dismissed the adversary proceeding without prejudice.  Id., ECF No. 37.

22

## DISCUSSION

## I.   Default judgment is warranted under the circumstances.

"Courts have broad discretion to manage discovery, including the authority to impose sanctions for discovery abuses as part of their case management responsibilities."  Smith v. Devine, 126 F.4th 331, 342 (4th Cir. 2025) (citing Russell v. Absolute Collection Services, Inc., 763 F.3d 385, 396 (4th Cir. 2014)). Specifically, "[i]f a party . . . fails to obey an order to provide or permit discovery, . . ." sanctions may include "dismissing the action" or "rendering a default judgment against the disobedient party[.]"  Fed. R. Civ. P. 37(b)(2)(A)(v)-(vi); Fed. R. Bankr. P. 3037; see also Young Again Products, Inc. v. Acord, 459 Fed. Appx. 294, 301 (4th Cir. 2011).

> A lower "court's finding that [a party] deliberately disregarded [a] pre-trial order is a factual finding. . . that can be overturned [on appeal] only if clearly erroneous." Rabb v. Amatex Corp., 769 F.2d 996, 1000 (4th Cir. 1985). . . . Nevertheless, "[w]hen the sanction involved is judgment by default, the district court's 'range of discretion is more narrow' because the district court's desire to enforce its discovery orders is confronted head-on by the party's rights to a trial by jury and a fair day in court." Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc., 872 F.2d 88, 92 (4th Cir. 1989).  To balance those competing interests in determining whether default judgment is an appropriate sanction, courts must consider the Wilson factors: "(1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions." Mey v. Phillips, 71 F.4th 203, 217 (4th Cir. 2023) (quoting Richards, 872 F.2d at 92).

Devine, 126 F.4th at 342 (citation modified).

23

Defendant acted in bad faith by repeatedly evading Plaintiff's discovery requests, in the face of repeated warnings from the Court. Mey, 71 F.4th, at 219. Bad faith can include repeatedly employing "evasive discovery tactics" despite warnings from the court, and a pattern of "failure to disclose discoverable materials . . . ." Id. at 219-20. Bad faith can also manifest as a party's flagrant disregard of the trial court's orders and noncompliance with deadlines when the noncompliant party has ample opportunity to comply with the court's orders. See National Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 642 (1976).

Over 400 days have passed since Plaintiff made the November 15, 2024, discovery requests. ECF No. 36, at 9-19. The Court entered two separate Orders on January 23, 2025, and June 20, 2025, respectively, commanding compliance in responding to discovery orders of which Defendant remains in continuing contempt. January 21, 2026, Hearing, 00:15:00-00:15:40. The Court has conducted multiple evidentiary hearings and warned Defendant on multiple occasions of the potential for serious sanctions if Defendant continued to disregard this Court's discovery orders. When Defendant did submit "responses" they were both five months late, facially invalid, and grossly inadequate – evincing Defendant's bad faith. ECF No. 49, at 9. The Court has determined that "Defendant . . . can produce at least some documents and

24

information requested by Plaintiff,"[21] id. at 10, nevertheless Defendant made no attempt to provide further information or to verify the information previously provided as ordered by the Court. Defendant was repeatedly made aware of the deficiencies in his response, and the steps Defendant was required to take to comply with discovery and the Court's orders. Id. at 14. Despite the prior orders and instructions, Defendant, by his own admission, did not make any effort to comply and has been in contempt since at least July 31, 2025. ECF No. 53, at 9. At the January 21, 2026, hearing, Defendant maintained that he could not, and cannot now, comply because of his medical status and the location of the requested documents.[22] This Court granted Defendant numerous and liberal deadline extensions and has found that Defendant could provide additional responses to the requested discovery. See,

---

[21] Defendant's response that his records were seized in 2021 is insufficient to ward off discovery claims related to post-petition conduct, communications, and knowledge, all of which necessarily accumulated after the filing of his petition on September 5, 2023. Id. Nor has Defendant attempted to disclose the "substance and timing of communications" he cannot access, as the Court ordered. Id. Defendant did not attempt to answer the discovery requests through non-computer sources. Id. at 14.

[22] On October 27, 2025, Defendant filed a Motion for Continuance, ECF No. 59, indicating that he could not attend a hearing previously scheduled on October 28, 2025, because it conflicted with a concurrent eviction proceeding ongoing in the Davie County State Court for which the Court determined that the automatic stay did not apply. See Case No. 23-10483, ECF No. 293. That same day the Court granted Defendant a continuance in contemplation of Defendant's concurrent litigation. ECF No. 60. Defendant fully participated in the Davie County State Court litigation since at least April 2, 2025, including effectuating and briefing an appeal of an eviction proceeding to the North Carolina Court of Appeals. See Bermuda Properties, LLC v. Beard, No. 25CVD000297-290 (N.C. Ct. App. filed Dec. 16, 2025).

e.g., ECF Nos. 34, 40, 44 & 49.  Defendant's willful disregard of this Court's orders amounts to bad faith.

Defendant's non-compliance has prejudiced Plaintiff.  Mey, 71 F.4th at 220.  Defendant's filibuster has effectively immobilized this case, and the only discovery Defendant has provided is deficient.  After a discovery period spanning more than 400 days, Defendant has failed to take any steps to further the resolution of this case.  Plaintiff contends that Defendant concealed his assets, falsified and concealed documents, made false statements, and disobeyed the orders of the Court in the underlying bankruptcy case. ECF No. 1.  Defendant's unwillingness to engage in discovery has prejudiced Plaintiff and his case.

The need for deterrence weighs heavily in favor of default judgment.  "While pro se litigants are entitled to some deference, they . . . also . . . [must] . . . 'respect . . . court orders without which effective judicial administration would be impossible.'"  Andruss, 2015 U.S. Dist. LEXIS 57614, at *10-11 (E.D. Va. Mar. 3, 2015) (quoting Ballard v. Carlson, 882 F.2d 93, 96 (4th Cir. 1989)).  Defendant's stalling and continued contempt shows a callous disregard for the authority of this Court and the Rules.  "[T]o ignore such bold challenges to the . . . court's power would encourage other litigants to flirt with similar misconduct." Richards, 872 F.2d at 92 (citing National Hockey

26

League, 427 U.S. at 643).  Defendant's noncompliance must be deterred, weighing heavily in favor of default judgment.

Lesser sanctions will not ensure Defendant's compliance. This Court has, as detailed above, issued several warnings about the consequences of failure to make good faith discovery responses. Defendant repeatedly has indicated that he is unable to afford monetary sanctions, and the imposition of such sanctions will not be effective.  Because of Defendant's noncompliance, resolving the dispute on the merits is not possible.  Re-opening discovery or further extensions of time would not alter the result in the case. Defendant has stated on the record that he does not intend to provide further discovery responses.  Therefore, the Court will strike Defendant's answer, strike the responses to Plaintiff's request for admission, deem those requests admitted, and enter a default judgment in favor of Plaintiff.

All four factors weigh in favor of these sanctions and default judgment against Defendant.

**II.   The Complaint and Response sufficiently state facts which, as admitted, support a denial of discharge.**

As indicated by the Court in its June 20 Order, the Court will strike Defendant's inadequate responses to Plaintiff's requests for admission and deem the request admitted.  Fed. R. Civ. P. 37(b)(2)(A)(i), (ii); United States v. Renfrow, 612 F. Supp. 2d 677, 682-83 (E.D.N.C. 2009) (explaining that because pro

27

se litigant received fair notice of the consequences of failing to respond to requests for admission, the court deemed the unanswered requests admitted); see ECF No. 49 at 12.  Furthermore, when default judgment is entered, the defendant admits all factual allegations in the complaint.  Fed R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); 10A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2688.1 (4th ed.) ("If the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true . . . ."). "Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action . . . ." Id.

Plaintiff asserts claims in its complaint under 11 U.S.C. § 727(a)(2), (3), (4) & (6).  Plaintiff seeks a declaration on all four counts finding that the complaint and response constitute a legitimate cause of action.  Although plead, the Court did not reach Count IV, whether a discharge should be denied under 11 U.S.C. § 727(a)(6).  Defendant's repeated and continuing disobedience of the Court's orders in this case itself would likely support barring his discharge under that section if the Court were not otherwise bound by the bases in the pleadings under Fed. R. Civ. P. 54(c), applicable by way of Fed. R. Bankr. P. 7054, in

28

connection with default judgement.  But, because Debtors discharge will be denied on the other grounds, the Court does not need to reach this section.  See In re Abell, 549 B.R. 631, 674 (Bankr. D. Md. 2016) (quoting Farouki v. Emirates Bank Int'l, 14 F.3d 244, 250 (4th Cir. 1994)).  Defendant's discharge is denied as detailed below.

### 1. Defendant's discharge is denied under 11 U.S.C. § 727(a)(2).

11 U.S.C. § 727(a)(2) provides that a debtor shall not receive a discharge if "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed . . . property of the debtor, within one year before the . . . filing of the petition; or . . . property of the estate, after the date of the filing of the petition."  11 U.S.C. § 727(a)(2).  The intent required under § 727(a)(2) is "actual intent."  In re McGalliard, 183 B.R. 726, 732 (Bankr. M.D.N.C. 1995).  Actual intent "requires that there be not only a deliberate act, but also that there be a specific intent to harm in the sense of delaying or hindering a creditor."  Id.  Since direct evidence of intent is rare, courts often rely on circumstantial evidence, course of conduct, or reckless indifference to the truth to infer intent.  See In re White, 128 F. App'x 994, 998-99 (4th Cir. 2005).

Defendant failed to schedule his full interest in the Greensboro Property, or any interest in the furniture or household goods within the Greensboro Property. ECF No. 1, ¶¶ 49, 75-76. Defendant failed to disclose in his schedules that he owned business interests in Bold Analytics, Ltd. and GeniHealth, Inc., id. ¶ 50, and falsely stated at his meeting of creditors that he had no ownership interest in Daufuskie or Pillar Capital. Defendant is deemed to have admitted that he was a member-manager of each.[23]  ECF No. 1, ¶ 21; ECF No. 36, at 12-13.  Defendant's residence contained significant personal property that Defendant did not list on his schedules and for which he paid a moving company over $14,000.00 to move after the sale of the property. ECF No. 1, ¶ 76.  Finally, Defendant falsely stated in filings with the Court that his bankruptcy case was a "no asset case," due to the false Daufuskie claim and the absence of other personal property.  Id. ¶ 83.

The pleadings and deemed admissions are sufficient to support Plaintiff's claim under § 727(a)(2).  These actions support, at minimum, a reckless indifference to the true state of Defendant's financial affairs such that Defendant acted with the requisite intent in transferring, removing, or concealing property of the

---

[23] Defendant opened a bank account in July 2015 in Pillar Capital's name, signing the documents necessary to open the account as Pillar Capital's member and was the only person with signature authority on the account.  ECF No. 1, ¶ 21; see also Case No. 23-10483, at ECF No. 223, at ¶ 12.

estate.  Thus, denial of discharge is warranted under § 727(a)(2) as Plaintiff has provided an appropriate basis for default judgment as to Count I of the complaint.

### 2. **Defendant's discharge is denied under 11 U.S.C. § 727(a)(3).**

11 U.S.C. § 727(a)(3) provides that a debtor may be denied a discharge if "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information . . . from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."[24] 11 U.S.C. § 727(a)(3).

Defendant has been deemed to admit that he created Daufuskie Lending Partners LLC, and that he falsified documentation purporting to establish that a secured claim existed against the Greensboro Property in favor of Daufuskie.  ECF No. 1, ¶¶ 26-39; ECF No. 36, at 13.  Defendant filed falsified documents with the Court and sent falsified letters to the trustee.  ECF No. 1, ¶¶

---

[24] A plaintiff need only allege that the debtor failed to produce adequate records and that those records relate to the debtor's financial condition or business transactions. In re Anderson, No. 03-13586C-7G, 2006 WL 995856, at *6 (Bankr. M.D.N.C. Feb. 13, 2006).  The burden of proof then shifts to the debtor to justify the lack of records under all the circumstances of the case.  Id. Thus, a plaintiff need not allege in their complaint that a debtor's lack of records was unjustified under the circumstances. See id.; see also In re Abell, 549 B.R. 631, 646, 676 (Bankr. D. Md. 2016) (holding that plaintiff's allegations that debtor refused to provide discovery were sufficient to state a claim for objection to discharge under § 727(a)(3), even when debtor argued they could not gain access to records due to their incarceration).

31

85-89. Defendant prepared these documents and letters and presented them to the Court to support the putative Daufuskie claim while "posing as Steven Novak, or acting in concert with him."[25] Id. ¶ 89. Daufuskie did not exist when the note secured by the Daufuskie Deed of Trust was executed or when the deed of trust was recorded. ECF No. 36, at 13. Indeed, in March 2024, Pillar Capital, an entity controlled by Defendant, id. at 13, attempted to change its name to Daufuskie Lending Partners, LLC after the commencement of this case, and despite discovery requests in the prepetition state court litigation, Defendant did not provide documentation supporting the validity of the Daufuskie claim. Id.; ECF No. 1, ¶¶ 17-18, 21, 26-39. The validity of the Daufuskie claim affects the disposition of the Greensboro Property, which is property of Defendant's bankruptcy estate and relevant to Defendant's financial condition. Defendant submitted falsified documents and letters related to the Daufuskie claim, and denial of discharge is warranted under § 727(a)(3).

### 3. Defendant's discharge is denied under 11 U.S.C. § 727(a)(4).

The false claim, along with Defendant's misstated schedules, also warrant a denial of discharge under 11 U.S.C. § 727(a)(4).

---

[25] Alternative pleading is permitted under Fed. R. Civ. P. 8(d)(2), made applicable to this adversary proceeding by Rule 7008. Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically . . . . [T]he pleading is sufficient if any one of them is sufficient.").

That section provides that a debtor's discharge may be denied if the debtor, in connection with the case, knowingly and fraudulently "made a false oath or account," "presented or used a false claim," or "withheld from an officer of the estate entitled to possession . . . any recorded information . . . relating to the debtor's property or financial affairs."  11 U.S.C. § 727(a)(4); see also Williamson v. Fireman's Fund Ins. Co., 828 F.2d 249, 251 (4th Cir. 1987) ("The false oath made by the debtor must have related to a material matter.").  For purposes of § 727(a)(4), a debtor's petition, schedules, statement of financial affairs, and responses made at a meeting of creditors all constitute statements under oath.  In re Worley, 517 B.R. 593, 601 (Bankr. M.D.N.C. 2014). Courts have found the requisite intent to defraud where a debtor's statements contain inconsistencies that exceed the bounds of honest mistake or are incompatible with a debtor's own knowledge and information.  Id. at 602; In re Michael, 452 B.R. 908, 919 (Bankr. M.D.N.C. 2011); see also Matter of Beaubouef, 966 F.2d 174, 178 (5th Cir. 1992) (upholding finding that debtor had requisite intent to deceive where debtor's schedules contained multiple falsehoods, and debtor did not remedy falsehoods when he filed amended schedules).  Finally, the subject matter of a false oath is material when it concerns the existence and disposition of a debtor's property.  Williamson, 828 F.2d at 252.

There are a number of instances in Defendant's main case of

33

Defendant making false statements and omissions in his petition, schedules, SOFA, and meeting of creditors, and many of Defendant's statements and omissions are inconsistent.  ECF No. 1, ¶¶ 48-65, 74-81.  For example, Defendant failed to schedule several claims asserted against him, failed to disclose pending litigation, falsely scheduled Daufuskie as a secured creditor, scheduled no deposit accounts despite scheduling monthly income, and scheduled no interest in any furniture or household goods within the Greensboro Property despite paying $14,840.00 post-petition to move personal property from the residence.[26]  Id. ¶¶ 55-65, 75-76.  Defendant filed these schedules under penalty of perjury. In re Evans, 538 B.R. 268, 298 (Bankr. W.D. Va. 2015).  Defendant did not remedy these inconsistencies when he filed his amended schedules.  See ECF No. 1, ¶ 75.  He claimed that he had no bank accounts, cash on hand, furniture, household goods, clothes, firearms, electronics, vehicles, business interests, or any other property.  Id. ¶¶ 75-76.  Yet, Defendant paid a moving company $14,840.00 to move his personal property to another location. Defendant's schedules indicated only that he owned a TV, computer, golf clubs, and clothing valued at $2,000.00.  Id. ¶ 77.

---

[26] At his meeting of creditors, Defendant testified that the furniture in the Greensboro Property was subject to a note in favor of Pillar Capital, that he "never had an ownership interest in" Pillar Capital, and that he had to "pay rent" to Pillar Capital for the furniture.  ECF No. 1, ¶¶ 78-81.  Defendant never disclosed any furniture or any secured claim or lease in favor of Pillar Capital in his schedules.  Id. ¶ 79; see Case No. 23-10483, ECF Nos. 28, 134 & 164.

Additionally, as discussed above, Defendant manufactured the Daufuskie claim to hinder or avoid recovery against the Greensboro Property. ECF No. 1, ¶¶ 26-39; ECF No. 36, at 13. These inconsistencies, coupled with Defendant's failure to remedy them, show that Defendant acted with the requisite intent to deceive, and additionally because those deceptions relate to Defendant's property and financial condition, they are related to material matters. See Case No. 23-10483, ECF Nos. 217 & 223. Thus, default judgment is warranted under § 727(a)(4).

## CONCLUSION

For the reasons set forth herein, the Court will strike Defendant's answer and his responses to Plaintiff's requests for admission, the requests for admission are deemed admitted, and the Court will enter a default judgment in favor of Plaintiff, denying Defendant's discharge under 11 U.S.C. § 727(a)(2), (3) & (4). The Court will enter judgment consistent with this opinion.

[END OF DOCUMENT]

<u>Parties to be Served</u>
(24-02010)

All parties to this adversary proceeding.